Petition for writ of certiorari to the United States Court of Appeals for the Ninth Circuit denied. Justice THOMAS, with whom Justice SCALIA joins, dissenting from denial of the petition for writ of certiorari.
Justice THOMAS, with whom Justice SCALIA joins, dissenting from the denial of certiorari.
"Self-defense is a basic right" and "the central component" of the Second Amendment's guarantee of an individual's right to keep and bear arms. McDonald v. Chicago,561 U.S. 742, 767, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010)(emphasis deleted). Less than a decade ago, we explained that an ordinance requiring firearms in the home to be kept inoperable, without an exception for self-defense, conflicted with the Second Amendment because it "ma [de] it impossible for citizens to use [their firearms] for the core lawful purpose of self-defense." District of Columbia v. Heller,554 U.S. 570, 630, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). Despite the clarity with which we described the Second Amendment's core protection for the right of self-defense, lower courts, including the ones here, have failed to protect it. Because Second Amendment rights are no less protected by our Constitution than *2800 other rights enumerated in that document, I would have granted this petition.
I
Section 4512 of the San Francisco Police Code provides that "[n]o person shall keep a handgun within a residence owned or controlled by that person unless" (1) "the handgun is stored in a locked container or disabled with a trigger lock that has been approved by the California Department of Justice" or (2) "[t]he handgun is carried on the person of an individual over the age of 18" or "under the control of a person who is a peace officer under [California law]." San Francisco Police Code, Art. 45, §§ 4512(a), (c) (2015). The law applies across the board, regardless of whether children are present in the home. A violation of the law is punishable by up to six months of imprisonment and/or a fine of up to $1,000. § 4512(e).
Petitioners-six San Francisco residents who keep handguns in their homes, as well as two organizations-filed suit to challenge this law under the Second Amendment. According to petitioners, the law impermissibly rendered their handguns "[in]operable for the purpose of immediate self-defense" in the home. Heller, supra,at 635, 128 S.Ct. 2783. Because it is impossible to "carry" a firearm on one's person while sleeping, for example, petitioners contended that the law effectively denies them their right to self-defense at times when their potential need for that defense is most acute. In support of that point, they cited a Department of Justice, Bureau of Justice Statistics, survey estimating that over 60 percent of all robberies of occupied dwellings between 2003 and 2007 occurred between 6 p.m. and 6 a.m.
The District Court for the Northern District of California denied them a preliminary injunction, and the U.S. Court of Appeals for the Ninth Circuit affirmed. The Court of Appeals readily acknowledged that the law "burdens the core of the Second Amendment right" because "[h]aving to retrieve handguns from locked containers or removing trigger locks makes it more difficult 'for citizens to use them for the core lawful purpose of self-defense' in the home." 746 F.3d 953, 964 (2014)(quoting Heller, supra,at 630, 128 S.Ct. 2783). But it reasoned that this was not a "severe burden" justifying the application of strict scrutiny because "a modern gun safe may be opened quickly." 746 F.3d, at 964. Applying intermediate scrutiny, the court evaluated San Francisco's proffered "evidence that guns kept in the home are most often used in suicides and against family and friends rather than in self-defense and that children are particularly at risk of injury and death." Id.,at 965. The court concluded that the law served "a significant government interest by reducing the number of gun-related injuries and deaths from having an unlocked handgun in the home" and was "substantially related" to that interest. Id.,at 966.
II
The decision of the Court of Appeals is in serious tension with Heller. We explained in Heller that the Second Amendment codified a right " 'inherited from our English ancestors,' " a key component of which is the right to keep and bear arms for the lawful purpose of self-defense. 554 U.S., at 599, 128 S.Ct. 2783. We therefore rejected as inconsistent with the Second Amendment a ban on possession of handguns in the home because "handguns are the most popular weapon chosen by Americans for self-defense in the home" and because a trigger-lock requirement prevented residents from rendering their firearms "operable for the purpose of immediate self-defense."
*2801 Id.,at 629, 635, 128 S.Ct. 2783. San Francisco's law allows residents to usetheir handguns for the purpose of self-defense, but it prohibits them from keepingthose handguns "operable for the purpose of immediateself-defense" when not carried on their person. The law thus burdens their right to self-defense at the times they are most vulnerable-when they are sleeping, bathing, changing clothes, or otherwise indisposed. There is consequently no question that San Francisco's law burdens the core of the Second Amendment right.
That burden is significant. One petitioner, an elderly woman who lives alone, explained that she is currently forced to store her handgun in a lock box and that if an intruder broke into her home at night, she would need to "turn on the light, find [her] glasses, find the key to the lockbox, insert the key in the lock and unlock the box (under the stress of the emergency), and then get [her] gun before being in position to defend [herself]." Declaration of Espanola Jackson in Support of Motion for Preliminary Injunction, Record in Case 3:09-cv-02143 (ND Cal.), Doc. 136-3, p. 2. As she is over 79 years old, that would "not [be] an easy task." Ibid.Another petitioner stated that she is forced to store her gun in a code-operated safe and, in the event of an emergency, would need to get to that safe, remember her code under stress, and correctly enter it before she could retrieve her gun and be in a position to defend herself. If she erroneously entered the number due to stress, the safe would impose a delay before she could try again. A third petitioner explained that he would face the same challenge and, in the event the battery drains on his battery-operated safe, would need to locate a backup key to access his handgun. In an emergency situation, the delay imposed by this law could prevent San Francisco residents from using their handguns for the lawful purpose of self-defense. And that delay could easily be the difference between life and death.
Since our decision in Heller,members of the Courts of Appeals have disagreed about whether and to what extent the tiers-of-scrutiny analysis should apply to burdens on Second Amendment rights. CompareHeller v. District of Columbia,670 F.3d 1244 (C.A.D.C.2011)("We ask first whether a particular provision impinges upon a right protected by the Second Amendment; if it does, then we go on to determine whether the provision passes muster under the appropriate level of constitutional scrutiny"), with id.,at 1271(Kavanaugh, J., dissenting) ("In my view, Heller and McDonaldleave little doubt that courts are to assess gun bans and regulations based on text, history, and tradition, not by a balancing test such as strict or intermediate scrutiny"). One need not resolve that dispute to know that something was seriously amiss in the decision below. In that decision, the Court of Appeals recognized that the law "burdens the core of the Second Amendment right," yet concluded that, because the law's burden was not as "severe" as the one at issue in Heller,it was "not a substantial burden on the Second Amendment right itself." 746 F.3d, at 963-965.But nothing in our decision in Hellersuggested that a law must rise to the level of the absolute prohibition at issue in that case to constitute a "substantial burden" on the core of the Second Amendment right. And when a law burdens a constitutionally protected right, we have generally required a higher showing than the Court of Appeals demanded here. See generallyHeller,554 U.S., at 628-635, 128 S.Ct. 2783; Turner Broadcasting System, Inc. v. FCC,512 U.S. 622, 662, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)(explaining that even intermediate scrutiny requires that a regulation not "burden substantially more speech than is necessary to *2802 further the government's legitimate interests" (internal quotation marks omitted)).
The Court should have granted a writ of certiorari to review this questionable decision and to reiterate that courts may not engage in this sort of judicial assessment as to the severity of a burden imposed on core Second Amendment rights. See Heller,554 U.S., at 634, 128 S.Ct. 2783("The very enumeration of the right takes out of the hands of government-even the Third Branch of Government-the power to decide on a case-by-case basis what is really worthinsisting upon"); id.,at 635, 128 S.Ct. 2783(explaining that the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home").
The Court's refusal to review this decision is difficult to account for in light of its repeated willingness to review splitless decisions involving alleged violations of other constitutional rights. See, e.g., Glossip v. Gross,574 U.S. ----, 135 S.Ct. 1885, --- L.Ed.2d ---- (2015)(cert.granted) (Eighth Amendment); Ontario v. Quon,560 U.S. 746, 130 S.Ct. 2619, 177 L.Ed.2d 216 (2010)(Fourth Amendment); Hill v. Colorado,530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000)(First Amendment). Indeed, the Court has been willing to review splitless decisions involving alleged violations of rights it has never previously enforced. See, e.g.,BMW of North America, Inc. v. Gore,517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)(right to limit on punitive damages awards). And it has even gone so far as to review splitless decisions involving alleged violations of rights expressly foreclosed by precedent. See, e.g.,Boumediene v. Bush,553 U.S. 723, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008)(right of aliens held outside U.S. territory to the privilege of habeas corpus); Lawrence v. Texas,539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003)(right to engage in adult, consensual same-sex intimate behavior). I see no reason that challenges based on Second Amendment rights should be treated differently.
* * *
We warned in Hellerthat "[a] constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all." 554 U.S., at 634, 128 S.Ct. 2783. The Court of Appeals in this case recognized that San Francisco's law burdened the core component of the Second Amendment guarantee, yet upheld the law. Because of the importance of the constitutional right at stake and the questionable nature of the Court of Appeals' judgment, I would have granted a writ of certiorari.