# In The

# *Court of Appeals*

# *Ninth District of Texas at Beaumont*

_____

## NO. 09-15-00373-CR
_____

## EX PARTE DEREK TY POE

**On Appeal from the County Court at Law No. 2**
**Jefferson County, Texas**
**Trial Cause No. 301268-A**

## OPINION

Derek Ty Poe was charged by information with the misdemeanor offense of disorderly conduct. *See* Tex. Penal Code Ann. § 42.01(a)(8) (West Supp. 2015). Poe filed an application for pretrial writ of habeas corpus, in which he contended that the disorderly conduct statute is facially unconstitutional due to its alleged vagueness and its alleged infringement upon his rights under the First, Second, Fifth, and Fourteenth Amendments to the United States Constitution and Article I, sections 8, 10, 19, and 23 of the Texas Constitution. *See* Tex. Penal Code Ann. §

1

42.01(a)(8).[1] After conducting an evidentiary hearing, the trial court denied Poe's application. In two appellate issues, Poe challenges the trial court's denial of his habeas application. We affirm the trial court's order denying habeas relief.

BACKGROUND

The State charged Poe with disorderly conduct. Specifically, the State contended that Poe "intentionally and knowingly display[ed] a deadly weapon, namely a firearm, in a public place and in a manner calculated to alarm[.]" Poe filed an application for pretrial writ of habeas corpus, in which he asserted that section 42.01(a)(8) of the Penal Code is unconstitutionally vague, overbroad, and violates his "constitutional rights to free speech and to bear arms[.]" Poe asserted that "the act of displaying a firearm is conduct protected by the First Amendment." Poe contended that the terms "displaying," "manner," "calculated," and "alarm" are undefined, rendering the statute vague and overly broad, and he argued that the statute fails to give a person of ordinary intelligence fair notice "that the statute

---

[1]Although various subsections of section 42.01 have been amended or deleted since the statute was enacted on January 1, 1974, with the exception of being renumbered, the language of the current version of section § 42.01(a)(8) is identical to the language the Legislature used when that subsection was enacted. See Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, sec. 42.01(a)(9), 1973 Tex. Gen. Laws 883, 954 (current version at Tex. Penal Code Ann. § 42.01(a)(8) (West Supp. 2015)). Therefore, we cite to the current version of the statute.

2

outlaws certain conduct and therefore encourages the police and the prosecution to make arbitrary and erratic arrests and convictions."

According to Poe, the statute "provides no guidance or explanation as to what facts or circumstance[s] must exist in order to determine if a defendant's conduct was done with the specific intent showing that he calculated his display of a firearm to be alarming." Poe maintained that the statute fails to give a reasonable person guidance as to what specific conduct is prohibited, and the statute's deficiencies "prevent law enforcement from having clear guidance as to what conduct in displaying a firearm is criminalized as being 'a manner calculated to alarm.'" Poe also argued that section 42.01(a)(8) has a chilling effect on public displays of firearms as an exercise of First Amendment rights. In addition, Poe contended that the statute violates the fundamental rights of persons to keep and bear arms under the Second Amendment.

Poe attached three affidavits to his application. The affidavit of T. Edwin Walker, Poe's attorney, stated that Walker had done an internet search for protests and activities involving open display of firearms for First Amendment purposes, and he averred that the twenty-eight pages attached to his affidavit were true and correct copies of the original news articles as posted on the Internet. Terry Louis Holcomb averred in his affidavit that he is the Executive Director of Texas Carry,

3

Inc., a non-profit corporation that advocates for open carry of handguns. Holcomb explained in the affidavit that "we plainly communicated to the Texas Legislature that if they did not allow a vote on the bill for open carry of a handgun with a concealed handgun license, . . . we would put on our long guns and carry them all across Texas in protest of the restrictions on our handguns." According to Holcomb,

> [t]he sole purpose of openly carrying rifles and shotguns is to express our belief that people should be allowed to openly carry handguns. We are attempting to educate the public not alarm them. We have no intention to alarm anyone which is why all rifles and shotguns are displayed in a safe[,] non-threatening manner.

Holcomb further averred that in Texas, there have been eighteen arrests for openly carrying a rifle, shotgun, or "replica pre-1899 black powder pistol," without a single conviction. According to Holcomb, "[w]e are intimidated with threat of arrest and told we cannot openly carry rifles, shotguns, and replica pre-1899 black powder pistols because a person may find the mere display of them to be alarming." Christopher John Grisham averred in his affidavit that he is President and Founder of Open Carry Texas (OCT), a non-profit gun rights group. According to Grisham, "OCT members have been arrested more than two dozen times for the lawful carry of their firearms openly as an expression of our mission to educate Texans on gun rights and secure more meaningful legislation that

4

recognizes our right to keep and bear arms." Grisham averred that "citizens can be arrested for a mere complaint and claim that one is 'alarmed' and not because any actual crime was committed." According to Grisham, openly carrying long arms and pre-1899 antique or replica revolvers is

> immensely important as a [First] Amendment issue as it draws attention and encourages dialogue on our efforts. No single method of speech has been more successful for us than the open display of firearms in a peaceful and respectful manner than carrying these long arms. Signs and flags only draw attention to the protestor, not the cause.

Grisham stated that "the law creates different standards depending on the complainant's beliefs about guns in public."

In response to Poe's application, the State asserted that three days after Christmas 2013, during evening hours when Parkdale Mall was crowded, Poe "harnessed and shouldered an AR-15 223 Caliber Assault Rifle [] and began traversing the Mall. Mall patrons[] and store workers were horrified, and as a result, many calls were made to 911."[2] According to the State, when Beaumont police officers approached Poe, Poe "immediately became belligerent with the officers while espousing [his] Second Amendment Rights[,]" but Poe eventually

---

[2]The State's use of the language "assault rifle" to describe the AR-15 is, at best, inaccurate. These rifles are not capable of being fired in the automatic mode; the trigger must be pulled every time a bullet is fired. The "AR" designation references ArmaLite, the firearms manufacturing company that originally designed the AR-15.

5

gave the rifle to the officers. The State asserted that Poe revealed to the officers that he was walking around the mall simply to exercise his Second Amendment right. The State argued that section 42.01(a)(8) is not overly broad or unconstitutionally vague, and asserted that Poe's actions were "clearly calculated to cause fear and panic."

At the habeas hearing, Poe testified that he had served in the Army for four years, and at the time of the alleged offense, he owned a firearms accessory store called Golden Triangle Tactical, which was located in Parkdale Mall. Poe testified that he commonly carried his rifle from his home to his place of business at the mall. Poe testified that on the day of the incident in December 2013, he was carrying the rifle across his back, and he had a bag of food in one hand and a drink in the other hand. According to Poe, he was carrying the rifle in a safe manner, and he was not threatening anyone or presenting the rifle in a threatening manner. Poe testified that, based upon his experience in the military, whenever a threat is anticipated, a rifle is carried in front of the body in what is called the "low ready" stance "so we could bring it up to the high ready if we're ready to engage." According to Poe, if someone were walking in anticipation of using his rifle, he would not carry it across his back.

Poe explained that part of the reason he carries his rifle on his back is because he believes he has a First Amendment right to do so to advocate for his Second Amendment rights. According to Poe, whenever he is walking with his rifle on his back, he is expressing his belief in the Second Amendment. Poe testified that he also carries his rifle to protest restrictions on open carry of handguns. Poe testified that Parkdale Mall is owned by a private company, and he explained that prior to the incident that led to his being charged with disorderly conduct, Parkdale Mall's management and security guards had never told him not to bring his rifle into the mall.

Terry Holcomb Sr. testified that he is the executive director of Texas Carry, which he explained is "a Second Amendment gun rights policy group that works with the legislature to enact removing barriers for our Second Amendment rights." Holcomb testified that he engages in First Amendment activities as an advocate for firearms rights. According to Holcomb, some of Texas Carry's First Amendment activities involve walking while wearing long rifles or long shotguns. Holcomb explained that the purpose of carrying guns in that manner was to protest Texas's lack of an open carry law for handguns, and people who were doing so were anticipating that other people will see them. Holcomb testified that the purpose of displaying the firearms in such a manner is not to cause alarm, but to "educate the

7

Texas citizens to the absurdity of our current laws." According to Holcomb, displaying a rifle on a sling across someone's back or side is a safe, non-threatening means of displaying the gun.

Holcomb testified that activists against gun rights sometimes use the disorderly conduct statute against gun rights protesters by a practice called "swatting." Holcomb explained that swatting involves contacting law enforcement and reporting that someone protesting by wearing a gun is about to rob a store, waving the gun around, or doing something threatening. According to Holcomb, although swatting is a common practice, no protester has been convicted under the disorderly conduct statute. Holcomb testified, "we're all very much aware that if we try and express our protests [at the capitol in Austin] that they will arrest us." During cross-examination, Holcomb testified that someone exercising First Amendment rights cannot falsely shout the word "fire" in a crowded theater or the words "hijack" or "gun" on an airplane. Holcomb also explained that the owner of private property can prohibit the carrying of a firearm on his property.

## POE'S ISSUES

In his first issue, Poe argues that section 42.01(a)(8) of the Texas Penal Code "is unconstitutionally vague pursuant to the First, Second, Fifth, and Fourteenth Amendments to the United States Constitution." In his second issue, Poe argues

8

that section 42.01(a)(8) is unconstitutionally overbroad. We address Poe's issues together.

"Whether a statute is facially constitutional is a question of law that we review *de novo*." *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). We presume that a statute is valid and that the Texas Legislature did not act unreasonably or arbitrarily. *Id*. at 14-15. "The burden normally rests upon the person challenging the statute to establish its unconstitutionality." *Id*. at 15. "[W]hen the government seeks to restrict and punish speech based on its content, the usual presumption of constitutionality is reversed." *Id*. "Content-based regulations (those laws that distinguish favored from disfavored speech based on the ideas expressed) are presumptively invalid, and the government bears the burden to rebut that presumption." *Id*.

Before a statute will be invalidated on its face as overbroad, the overbreadth must be real and substantial when "judged in relation to the statute's plainly legitimate sweep." *Id*. A statute should not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional application. *See In re Shaw*, 204 S.W.3d 9, 15 (Tex. App.—Texarkana 2006, pet. ref'd). With respect to vagueness, statutes are not necessarily unconstitutionally vague merely because the words or terms employed in the statute are not specifically defined. *See Engelking*

9

*v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988). When a statute does not define the words used therein, we will give the words their plain meaning. *See Parker v. State*, 985 S.W.2d 460, 464 (Tex. Crim. App. 1999); *see also* Tex. Gov't Code Ann. § 311.011(a) (West 2013) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). A statute will be invalidated if it fails to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. *See State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006). We will not invalidate a statute for overbreadth "merely because it is possible to imagine some unconstitutional applications." *In re Shaw*, 204 S.W.3d at 15.

Because Poe makes a facial challenge to the statute, he must prove that the statute is unconstitutional in every application, and that the statute could never be constitutionally applied to any defendant under any set of facts or circumstances.[3] *See State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013); *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992). As previously discussed, whether a statute is facially constitutional is a question of law that we review *de novo*. *Ex parte Lo*, 424 S.W.3d at 14; *Maloney v. State*, 294 S.W.3d 613, 626 (Tex.

---

[3]Poe has not made an 'as-applied' challenge; further, the factual development of the evidence in the record before us is insufficient to allow us to consider such a claim.

Crim. App. 2009). If we determine that there is a reasonable construction which will render the statute constitutional, we must uphold the statute. *Tarlton v. State*, 93 S.W.3d 168, 175 (Tex. App. – Houston [14th Dist.] 2002, pet. ref'd).

Section 42.01(a)(8) provides as follows: "A person commits an offense if he intentionally or knowingly . . . displays a firearm or other deadly weapon in a public place in a manner calculated to alarm[.]" Tex. Penal Code Ann. § 42.01(a)(8). The plain wording of section 42.01(a)(8) provides that the punishable conduct is the *intentional and knowing* display of a firearm in a public place, and the actor must display the firearm "*in a manner calculated to alarm*[.]" *Id.* (emphasis added). Section 42.01(a)(8) specifically includes a *mens rea*: it states the person must act *intentionally or knowingly* when he displays a firearm in a public place, and his displaying of the firearm must have been *calculated* to alarm. *Id.* The disorderly conduct offense defined by subsection (a)(8) is the *conduct* of displaying a firearm in a public place *in a manner calculated to alarm*. *See id.*

In this case, the charging instrument alleged that Poe "intentionally and knowingly displayed a deadly weapon, namely a firearm, in a public place and in a manner calculated to alarm[.]" We conclude that (1) the statute punishes conduct rather than the content of speech alone, and (2) the statute bears a rational relationship to the State's legitimate and compelling interest in protecting its

11

citizens from potential harm. *See Broadrick*, 413 U.S. 601, 615 (1973); *Ex parte Woodall*, 154 S.W.3d 698, 702 (Tex. App.—El Paso 2004, pet. ref'd) (holding that ordinance restricting smoking bears a rational relationship to interest in protecting general health, safety, and welfare); *see also Ex parte Lo*, 424 S.W.3d 10, 16-17 (noting the distinction between regulating speech versus regulating conduct).

Because section 42.01(a)(8) punishes conduct, we reject Poe's argument that we should analyze his appellate issues using the strict scrutiny standard of review. Accordingly, we begin by presuming that the statute is valid, and that the legislature did not act arbitrarily or unreasonably in enacting the statute. *Ex parte Lo*, 424 S.W.3d at 15.

As previously discussed, Poe asserts that the statute is "unconstitutionally vague because it does not give a reasonable person guidance as to what specific conduct is prohibited." Poe complains that the word "alarm" is "inherently subjective[,]" and he argues that "there is a great degree of variance of human perception of which conduct is alarming[.]" We begin by looking to the language of the statute and giving terms their plain meaning. *See Parker*, 985 S.W.2d at 464; *see also* Tex. Gov't Code Ann. § 311.011(a).

Although the statute does not define the terms "manner[,]" "calculated[,]" or "alarm[,]" we conclude that those words have commonly known and accepted

12

usage and meaning. "Manner" is defined as the "mode or method in which something is done or happens." WEBSTER'S THIRD NEW INT'L DICTIONARY 1376 (2002). "Calculated" is defined as "planned or contrived so as to accomplish a purpose or achieve an effect: thought out in advance: deliberately planned[.]" *Id.* at 315. "Alarm" is defined as "fear or terror resulting from a sudden sense of danger[.]" *Id.* at 48. We conclude that the statute describes the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited. *See Holcombe*, 187 S.W.3d at 499. The statute's requirements that the display of a firearm be done intentionally or knowingly *and* in a manner calculated to alarm take the context of the actor's speech into question and require the State to meet a high burden of proving the requisite mental state. We conclude that the statute is reasonably related to the State's legitimate interest in protecting the public from harm. Poe has not satisfied his burden to prove that the statute is unconstitutionally vague, and we conclude that the statute provides fair notice of the prohibited conduct.

The United States Supreme Court has held that the overbreadth doctrine involves balancing the effects of the statute on protected speech with the otherwise legitimate and necessary prohibition of antisocial behavior that has been made criminal. *See United States v. Williams*, 553 U.S. 285, 292 (2008). The United

13

States Supreme Court held as follows: "In order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep. Invalidation for overbreadth is 'strong medicine' that is not to be 'casually employed.'" *Id*. (internal citations omitted). Section 42.01(a)(8) unambiguously provides that a person is prohibited from "intentionally or knowingly" displaying a weapon in a public place "in a manner calculated to alarm[.]" Tex. Penal Code Ann. § 42.01(a)(8).

We conclude that although there clearly are constitutional rights to bear arms and to express oneself freely, there is no constitutionally protected right to display a firearm in a public place *in a manner that is calculated to alarm*. In addition, we note that Poe's own evidence indicates that the statute is rarely employed against protesters and has not resulted in any convictions of protesters who are exercising their First and Second Amendment rights. The statute's plainly legitimate sweep bears a rational relationship to the State's interest in public safety and welfare. Accordingly, we overrule Poe's issues and affirm the trial court's order denying Poe's application for writ of habeas corpus.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on December 23, 2015
Opinion Delivered April 20, 2016
Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

15

CONCURRING OPINION

In this pretrial habeas proceeding, Poe challenges section 42.01(a)(8)[1] of the disorderly conduct statute and argues that the statute is facially unconstitutional and unconstitutionally vague. I agree with the majority's conclusion to overrule Poe's facial constitutional challenges and his challenge that the statute is unconstitutionally vague. I write separately from the majority to clarify the basis for my conclusion that Poe has failed to meet his heavy burden to establish a facial challenge to the statute.

## Facial Constitutional Challenges

A defendant may file a pretrial application for writ of habeas corpus in order to raise a facial challenge to the constitutionality of the statute under which the defendant is charged. *Ex parte Thompson*, 442 S.W.3d 325, 333 (Tex. Crim. App. 2014). Whether a statute is facially unconstitutional is a question of law subject to *de novo* review. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). When the constitutionality of a statute is attacked, a court usually must presume that the

---

[1] Tex. Penal Code Ann. § 42.01 (a)(8) (West Supp. 2015) (*see* Majority Opinion at n.1 for further reference). The relevant statutory language is as follows:
§ 42.01. Disorderly Conduct
  (a) A person commits an offense if he intentionally or knowingly:
  . . .
    (8) displays a firearm or other deadly weapon in a public place in a manner calculated to alarm[.]

statue is valid and that the Legislature has not acted unreasonably or arbitrarily. *Id.* at 15. With respect to constitutional provisions other than the First Amendment, a facial challenge to the constitutionality of a statute will succeed only if it is shown that the statute is unconstitutional in all of its applications. *State v. Johnson*, 475 S.W.3d 860, 864 (Tex. Crim. App. 2015). With respect to facial challenges that pertain to an activity or speech protected by the First Amendment, the challenger may also bring a "substantial overbreadth" challenge. *United States v. Stevens*, 559 U.S. 460, 473 (2010). Under the "substantial overbreadth" doctrine, the statute may be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id*. The "substantial overbreadth" challenge may be made when a statute restricts or punishes speech based upon its content. *Ex parte Lo*, 424 S.W.3d at 15. There is no recognized application of the "substantial overbreadth" doctrine to any challenge outside of certain First Amendment challenges. *McGruder v. State*, 2016 Tex. Crim. App. LEXIS 36, *5 (Tex. Crim. App. 2016) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Briggs v. State*, 789 S.W.2d 918, 923 (Tex. Crim. App. 1990); *State ex rel. Lykos v. Fine*, 330 S.W.3d at 904, 909 & n. 13. (Tex. Crim. App. 2011)).

The overbreadth doctrine is "strong medicine" that is used "sparingly and only as a last resort." *Johnson*, 475 S.W.3d at 865 (citing *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988); *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973); *Ex parte Thompson*, 442 S.W.3d at 349)). When making a "substantial overbreadth" challenge under the First Amendment, the challenger must establish that the statute as written "prohibit[s] a substantial amount of protected expression, and the danger that the statute will be unconstitutionally applied must be realistic and not based on 'fanciful hypotheticals.'" *Id*. (footnotes omitted) (quoting *Stevens*, 559 U.S. at 485 (Alito, J., dissenting)). Therefore, Poe must demonstrate "'that a substantial number of instances exist in which the Law cannot be applied constitutionally.'" *See id*. (quoting *New York Club Ass'n*, 487 U.S. at 14). "The Supreme Court generally does not apply the 'strong medicine' of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law." *Id*. (quoting, *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-450 (2008)).

<u>Poe's First Amendment Challenge</u>

Poe argues that section 42.01(a)(8) is facially unconstitutional because the statute infringes upon his First Amendment[2] right to freedom of speech. While I agree with the majority that as written section 42.01(a)(8) appears to regulate conduct rather than speech, the display of a weapon could, in some instances, be connected to the exercise of free speech. Expressive conduct may, in some instances, run afoul of the First Amendment, and some statutes that prohibit such conduct may indeed be facially unconstitutional. *See, United States v. Eichman*, 496 U.S. 310 (1990); *Texas v. Johnson*, 491 U.S. 397 (1989); *State v. Johnson*, 475 S.W.3d at 882 ("[T]he Texas flag-destruction statute, by its text and in actual fact, prohibits a substantial amount of activity that is protected by the First Amendment, judged in relation to its legitimate sweep. Consequently, we hold that the Texas flag-destruction statute is facially invalid because it is unconstitutionally overbroad in violation of the First Amendment.").

On the other hand, not all types of speech or expressive conduct are protected by the First Amendment. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942) ("fighting words" constitute "no essential part of any exposition of

---

[2] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I.

ideas," and therefore are not protected by the First Amendment); *R.A.V. v. City of St. Paul,* 505 U.S. 377, __(1992) (Scalia, J., writing for the majority explained that "the exclusion of 'fighting words' from the scope of the First Amendment simply means that, for purposes of that Amendment, the unprotected features of the words are, despite their verbal character, essentially a 'nonspeech' element of communication. Fighting words are thus analogous to a noisy sound truck: Each is, as Justice Frankfurter recognized, a 'mode of speech,' [citation omitted] both can be used to convey an idea; but neither has, in and of itself, a claim upon the First Amendment.").

In *R.A.V. v. City of St. Paul*, the Supreme Court examined a statute that prohibited certain expressive conduct that included racially motivated cross burning or displays and behavior that the Supreme Court described as "reprehensible." 505 U.S. at 396. Therein, several teenagers, including the petitioner, allegedly assembled and burned a cross inside the fenced yard of a family that lived across the street from the petitioner. The City could have charged the petitioner with several different criminal violations, but petitioner was charged with a violation of the St. Paul "Bias-Motivated Crime Ordinance," St. Paul, Minn., Legis. Code § 292.02 (1990). According to the majority, even though the expression that was reached by the statute might be proscribable under the

5

"fighting words" doctrine, the court "nonetheless conclude[d] that the ordinance is facially unconstitutional in that it prohibits otherwise permitted speech solely on the basis of the subjects the speech addresses." *Id*. at 381.

Nevertheless, when the intent as outlined within a statute "is to do something that, if accomplished, would be unlawful and outside First Amendment protection, such as the intent to threaten or intimidate, such an intent might help to eliminate First Amendment concerns." *Ex parte Thompson*, 442 S.W.3d at 338. For example, in *Scott v. State*, 322 S.W.3d 662, 669-70 (Tex. Crim. App. 2010),[3] the Court of Criminal Appeals upheld the harassment statute section 42.07(a)(4), and concluded that the statute is not unconstitutionally vague and that it does not implicate the free speech guarantee under the First Amendment, as it is directed only at someone who with the specific intent to inflict emotional distress, repeatedly uses the telephone to invade the personal privacy of another person in a manner reasonably likely to inflict emotional distress. In contrast, in *Ex parte Thompson*, the Court of Criminal Appeals struck down the "Improper Photography or Visual Recording"

---

[3] In *Wilson v. State*, 448 S.W.3d 418, 423 (Tex. Crim. App. 2014), the Court of Criminal Appeals disavowed a footnote contained in *Scott* which related to the term "repeated," and the Court provides further guidance on use of the phrase "repeated telephone communications." Justice Keller, joined by Justice Johnson, indicates that in light of the "abandonment of some of the rationales in *Scott*" the Court should, "when the issue is raised again, re-evaluate" its holding in *Scott*. *Id*. at 426-27 (Keller, J., concurring).

6

statute because "to the extent it proscribes the taking of photographs and the recording of visual images, [it] is unconstitutional on its face in violation of the Free Speech clause of the First Amendment." *See* 442 S.W.3d at 330, 351. The photography statute expressly covered all photographs other than those taken in a bathroom or private dressing room, and it was therefore "designed as a catch-all, to reach other situations in which photography and visual recordings ought to be prohibited." *Id.* at 349.

In comparison to the "Bias Motivated" statute in *R.A.V. v. City of St. Paul*, or the flag destruction statutes in *Texas v. Johnson* and *State v. Johnson*, and the photography statute in *Ex parte Thompson*, the statute that Poe is charged under is more analogous to the harassment statute in *Scott v. State*. Section 42.01(a)(8) does not prohibit a person from using a symbol as part of expressive conduct, does not prohibit "otherwise permitted speech solely on the basis of the subjects the speech addresses," and it does not act as a catch-all provision to reach expressive conduct. Rather, the plain language in section 42.01(a)(8) prohibits conduct that, if accomplished, would be unlawful and outside First Amendment protection, in that it criminalizes an intentional or knowing act that is done in a manner calculated to alarm, and would not be substantially protected by the First Amendment. Accordingly, I agree with the majority that the statute as written regulates conduct

7

and not speech. *See generally State v. Paquette*, No. 09-15-00361-CR, 2016 Tex. App. LEXIS 1858, at \*7 (Tex. App.—Beaumont Feb. 24, 2016, no pet.) (discussing online solicitation provision and rejecting overbreadth challenge to Tex. Penal Code section 33.021(c) under the First Amendment); *Ex parte Victorick*, No. 09-13-00551-CR, 2014 Tex. App. LEXIS 5429, at \*\*6-18 (Tex. App.—Beaumont May 21, 2014, pet. ref'd) (mem. op., not designated for publication), *cert. denied*, *Victorick v. Texas*, 135 S. Ct. 1557, 191 L. Ed. 2d 638 (2015).

Poe has failed to establish that the statute in question prohibits a substantial amount of activity that is protected by the First Amendment, judged in relation to its plainly legitimate sweep. Accordingly, I agree with the decision of the majority to overrule Poe's First Amendment challenge to the statute. We expressly do not decide whether the statute is unconstitutional *as applied* to Poe.[4]

---

[4] A facial challenge to the constitutionality of a statute must generally assert that there are no factual circumstances under which the statute would be constitutional. *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 909 (Tex. Crim. App. 2011). When making a facial challenge, evidence regarding how the statute operates in practice is irrelevant. *Id*. at 908-09. In a facial challenge, we consider how the statute is written rather than how it operates or is applied in practice. *Salinas v. State*, 464 S.W.3d 363, 367 (Tex. Crim. App. 2015). The Court of Criminal Appeals has cautioned against the use of pretrial writs to adjudicate certain constitutional challenges. *See Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001) (pretrial habeas may not be available for "as applied" challenge but may be available when facial challenge to constitutionality of statute is made);

<u>Poe's Second Amendment Challenge</u>

With respect to Poe's challenge under the Second Amendment, in my opinion, the Court must analyze this challenge separately from the First Amendment because the "substantial overbreadth" doctrine would not apply to Poe's Second Amendment challenge.

The framers of the United States Constitution expressly recognized the right of the people to "keep and bear [a]rms[.]" *See* U.S. CONST. amend. II ("A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."). The Second Amendment extends to and protects an individual right to keep and bear arms and the Second Amendment is fully applicable to the States. *Caetano v. Massachusetts*, No. 14-10078, 2016 U.S. LEXIS 1862, at \*\*1-2 (March 21, 2016) (per curiam) (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010)).

---

*see also Ex parte Perry*, No. PD-1067-15, 2016 Tex. Crim. App. LEXIS 43, at \*\*7-8 (Tex. Crim. App. Feb. 24, 2016) (explaining in further detail instances where a pretrial habeas challenge might be available for particular "as-applied" challenges). I express no opinion as to an "as-applied" challenge, and note that a party generally has a different burden to establish an "as-applied" challenge. *See Combs v. STP Nuclear Operating Co.*, 239 S.W.3d 264, 272 (Tex. App.—Austin 2007, pet. denied) ("[A] party making an as-applied challenge need only show that the statute is unconstitutional because of the manner in which it was applied in a particular case." An as-applied challenge is "fact specific[.]").

In *Heller*, the United States Supreme Court held that the District of Columbia's statute that prohibited the possession of handguns in the home, as well as its provision requiring handguns to be inoperable if kept in the home, violated the right guaranteed to the individual by the Second Amendment to the Federal Constitution. 554 U.S. at 635. Nevertheless, as stated by Justice Scalia in the *Heller* majority opinion, the fundamental right secured by the Second Amendment is not unlimited.

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. [] For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. [] Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 626-27 (internal citations and footnote omitted).

The *Heller* majority explained that the ruling was consistent with the earlier case of *United States v. Miller*, 307 U.S. 174 (1939). *See id.* at 621-23. According to *Heller*, "*Miller* stands only for the proposition that the Second Amendment

right, whatever its nature, extends only to certain types of weapons." *Id*. at 623. In *Miller*, the defendant was charged with illegally possessing a short-barreled shotgun and the Supreme Court rejected his challenge that the state statute prohibiting the possession of such weapons was in violation of the right to "keep and bear arms" guaranteed by the Second Amendment. 307 U.S. at 175-77, 182-83. Nevertheless, it would be wrong to conclude that the scope of the Second Amendment applies only to those weapons useful in warfare. As noted by the *Heller* majority, there may be some weapons like machine guns, for example, that would be useful in warfare but are not typically possessed by law abiding citizens for law abiding purposes. 554 U.S. at 624. The majority concluded that the operative clause in the Second Amendment, "the right of the people to keep and bear Arms, shall not be infringed[,]" is not limited by the introductory or prefatory clause which references a "well regulated Militia[.]" *See id*. at 577-78. "[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582. However, the majority emphasized that the right to "keep and bear arms" does not import a right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *See id*. at 626.

11

In 2010, the United States Supreme Court held that the Second Amendment's protections apply fully to the states. *McDonald*, 561 U.S. at 750. In *McDonald*, the Supreme Court examined whether the Second Amendment applied to a Chicago law that banned handguns in the home. *Id.* at 750-53. The *McDonald* majority, authored by Justice Alito, stated:

> Two years ago, in *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008), we held that [1] the Second Amendment protects the right to keep and bear arms for the purpose of self-defense, and we struck down a District of Columbia law that banned the possession of handguns in the home. The city of Chicago (Chicago or City) and the village of Oak Park, a Chicago suburb, have laws that are similar to the District of Columbia's, but Chicago and Oak Park argue that their laws are constitutional because the Second Amendment has no application to the States. We have previously held that [2] most of the provisions of the Bill of Rights apply with full force to both the Federal Government and the States. Applying the standard that is well established in our case law, we hold that [3] the Second Amendment right is fully applicable to the States.

*Id.* at 749-50. The Supreme Court again noted, as previously discussed in *Heller*, the Second Amendment right to "keep and bear arms" is not unlimited and again referenced the "longstanding" regulations discussed in *Heller*. *McDonald*, 561 U.S. at 786 (citing *Heller*, 554 U.S. at 626-27).

In *Jackson v. City and County of San Francisco*, 135 S. Ct. 2799 (2015), in a 7-2 decision, the Supreme Court denied the petition for writ of certiorari wherein the petitioners sought to enjoin a San Francisco Police Code provision that

12

provides that no person shall keep a handgun within a residence owned or controlled by that person unless the gun is stored in a locked container or with a trigger lock, as well as other limitations. In a dissent authored by Justice Thomas and joined by Justice Scalia, the dissent argued that the lower appellate court's decision was questionable, and the dissent would have granted the petition in light of *Heller*. 135 S. Ct. at 2799-2802 (Thomas, J., dissenting).

In *Friedman v. City of Highland Park*, 136 S. Ct. 447 (2015), in a 7-2 decision, the Supreme Court denied the petition for writ of certiorari and refused to review the ruling of the Seventh Circuit Court of Appeals upholding an ordinance in the City of Highland Park, Illinois, which included a ban on semiautomatic firearms such as the AR-15 rifle. In a dissent once again authored by Justice Thomas and joined by Justice Scalia, the dissent argued that the ban was directly in violation of *Heller*, and the dissent would have granted the petition. 136 S. Ct. at 447 (Thomas, J. dissenting). The dissent explained that law-abiding citizens carry and possess such weapons for self-defense and target shooting, and it should not matter whether law-abiding citizens might have other firearms they could use for such purposes. *Id*. at 448-50. Furthermore, the dissent noted there is a distinction between such firearms and sawed-off shotguns, which are not commonly used by law abiding citizens for lawful purposes. *Id*. at 449. The dissent stated "[i]f a broad

ban on firearms can be upheld based on conjecture that the public might *feel* safer (while being no safer at all), then the Second Amendment guarantees nothing." *Id.*

Most recently, in *Caetano v. Massachusetts*, in a *per curiam* decision, the Supreme Court followed *Heller*, and concluded that the Second Amendment applied to a Massachusetts law prohibiting the possession of stun guns. 2016 U.S. LEXIS 1862, at \*\*1-2. The Supreme Court held that the Second Amendment's protections include the right of an individual to carry a stun gun for self-defense. *Id.* at \*\*2-3. The Supreme Court reaffirmed its previous analysis in *Heller* that the Second Amendment protects the individual right to "keep and bear arms" even with respect to weapons like stun guns that were not traditionally used in warfare. *Id.*; *Heller*, 554 U.S. at 624-25.

*Heller*, when read in conjunction with *Caetano*, confirms that the Second Amendment right to keep and bear arms necessarily includes the individual right of law-abiding citizens to keep and bear arms (firearms and other weapons such as "stun-guns") for self-defense. *See Caetano*, 2016 U.S. LEXIS 1862, at \*\*2-3; *McDonald*, 561 U.S. at 749-50; *Heller*, 554 U.S. at 635.[5] Nevertheless, we also

---

[5] Justice Thomas has also acknowledged that firearms such as "modern sporting rifles (*e.g.,* AR-style semiautomatic rifles)" are owned by many Americans "for lawful purposes like self-defense, hunting, and target shooting." *Friedman v. City of Highland Park*, 136 S. Ct. 447, 447-50 (2015) (Thomas, J. dissenting). In the case at bar, Poe was carrying an AR-15 rifle.

know that the Second Amendment right to "keep and bear arms" does not import a right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. *Heller* expressly did not "undertake an exhaustive historical analysis [] of the full scope of the Second Amendment[.]" *Id*. Similarly, in the matter now before us, this Court need not engage in an exhaustive discussion regarding the full scope of the Second Amendment. Rather, the issue before us today is whether section 42.01(a)(8) of the disorderly conduct statute is facially unconstitutional under the Second Amendment.

The statutory provision that Poe challenges prohibits a person from "intentionally or knowingly . . . display[ing] a firearm or other deadly weapon in a public place in a manner calculated to alarm[.]" "[T]o prevail on a facial challenge" under the Second Amendment, Poe had the burden to "establish that the statute always operates unconstitutionally in all possible circumstances." *See State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). Poe has failed to establish that the statute on its face as written always operates in all possible circumstances to unconstitutionally infringe upon the rights guaranteed under the Second Amendment. *See Salinas v. State*, 464 S.W.3d 363, 367 (Tex. Crim. App. 2015). Therefore, I agree with the decision of the majority to overrule Poe's facial

15

challenge under the Second Amendment. We expressly do not decide whether the statute is unconstitutional *as applied* to Poe.[6]

<u>Poe's Challenge under the Fifth Amendment and State Constitution</u>

Poe fails to include any argument in his brief pertaining to his allegations that the statute is facially unconstitutional pursuant to the Fifth Amendment to the United States Constitution and he fails to include any specific argument regarding his claim under Article I, Sections 8, 10, 19 and 23 of the Texas Constitution.

The "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). Conclusory arguments that cite no authority present nothing for our review. *See Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011); *Vuong v. State*, 830 S.W.2d 929, 940 (Tex. Crim. App. 1992); *Atkins v. State*, 919 S.W.2d 770, 774-75 (Tex. App.—Houston [14th Dist.] 1996, no pet.). Accordingly, I would also overrule Poe's challenge with respect to the Fifth Amendment, and Article I, Sections 8, 10, 19 and 23 of the Texas Constitution.

---

[6] See n.3.

16

I concur in the majority's decision to overrule Poe's issues and to affirm the trial court's order denying Poe's application for writ of habeas corpus.

_____
LEANNE JOHNSON
Justice

Concurrence Delivered
April 20, 2016