# SUPREME COURT OF THE UNITED STATES

EDWARD PERUTA, ET AL. *v.* CALIFORNIA, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 16–894.   Decided June 26, 2017

The petition for a writ of certiorari is denied.

JUSTICE THOMAS, with whom JUSTICE GORSUCH joins, dissenting from the denial of certiorari.

The Second Amendment to the Constitution guarantees that "the right of the people to keep and bear Arm[s] shall not be infringed." At issue in this case is whether that guarantee protects the right to carry firearms in public for self-defense. Neither party disputes that the issue is one of national importance or that the courts of appeals have already weighed in extensively. I would therefore grant the petition for a writ of certiorari.

## I

California generally prohibits the average citizen from carrying a firearm in public spaces, either openly or concealed. With a few limited exceptions, the State prohibits open carry altogether. Cal. Penal Code Ann. §§25850, 26350 (West 2012). It proscribes concealed carry unless a resident obtains a license by showing "good cause," among other criteria, §§26150, 26155, and it authorizes counties to set rules for when an applicant has shown good cause, §26160.

In the county where petitioners reside, the sheriff has interpreted "good cause" to require an applicant to show that he has a particularized need, substantiated by documentary evidence, to carry a firearm for self-defense. The sheriff's policy specifies that "concern for one's personal safety" does not "alone" satisfy this requirement. *Peruta* v. *County of San Diego*, 742 F. 3d 1144, 1148 (CA9 2014)

(internal quotation marks omitted). Instead, an applicant must show "a set of circumstances that distinguish the applicant from the mainstream and cause him to be placed in harm's way." *Id.*, at 1169 (internal quotation marks and alterations omitted). "[A] typical citizen fearing for his personal safety—by definition—cannot distinguish himself from the mainstream." *Ibid.* (emphasis deleted; internal quotation marks and alterations omitted). As a result, ordinary, "law-abiding, responsible citizens," *District of Columbia* v. *Heller*, 554 U. S. 570, 635 (2008), may not obtain a permit for concealed carry of a firearm in public spaces.

Petitioners are residents of San Diego County (plus an association with numerous county residents as members) who are unable to obtain a license for concealed carry due to the county's policy and, because the State generally bans open carry, are thus unable to bear firearms in public in any manner. They sued under Rev. Stat. §1979, 42 U. S. C. §1983, alleging that this near-total prohibition on public carry violates their Second Amendment right to bear arms. They requested declaratory and injunctive relief to prevent the sheriff from denying licenses based on his restrictive interpretation of "good cause," as well as other "relief as the Court deems just and proper." First Amended Complaint in No. 3:09–cv–02371, (SD Cal.) ¶¶149, 150, 152. The District Court granted respondents' motion for summary judgment, and petitioners appealed to the Ninth Circuit.

In a thorough opinion, a panel of the Ninth Circuit reversed. 742 F. 3d 1144. The panel examined the constitutional text and this Court's precedents, as well as historical sources from before the founding era through the end of the 19th century. *Id.,* at 1150–1166. Based on these sources, the court concluded that "the carrying of an operable handgun outside the home for the lawful purpose of self-defense . . . constitutes 'bear[ing] Arms' within the

meaning of the Second Amendment." *Id.*, at 1166. It thus reversed the District Court and held that the sheriff's interpretation of "good cause" in combination with the other aspects of the State's regime violated the Second Amendment's command that a State "permit *some form* of carry for self-defense outside the home." *Id.,* at 1172.

The Ninth Circuit *sua sponte* granted rehearing en banc and, by a divided court, reversed the panel decision. In the en banc court's view, because petitioners specifically asked for the invalidation of the sheriff's "good cause" interpretation, their legal challenge was limited to that aspect of the applicable regulatory scheme. The court thus declined to "answer the question of whether or to what degree the Second Amendment might or might not protect a right of a member of the general public to carry firearms openly in public." *Peruta* v. *County of San Diego*, 824 F. 3d 919, 942 (2016). It instead held only that "the Second Amendment does not preserve or protect a right of a member of the general public to carry *concealed* firearms in public." *Id.,* at 924 (emphasis added).

II

We should have granted certiorari in this case. The approach taken by the en banc court is indefensible, and the petition raises important questions that this Court should address. I see no reason to await another case.

A

The en banc court's decision to limit its review to whether the Second Amendment protects the right to concealed carry—as opposed to the more general right to public carry—was untenable. Most fundamentally, it was not justified by the terms of the complaint, which called into question the State's regulatory scheme as a whole. See First Amended Complaint ¶63 ("Because California does not permit the open carriage of loaded firearms,

concealed carriage with a [concealed carry] permit is the only means by which an individual can bear arms in public places"); *id.*, ¶74 ("States may not completely ban the carrying of handguns for self-defense"). And although the complaint specified the remedy that intruded least on the State's overall regulatory regime—declaratory relief and an injunction against the sheriff's restrictive interpretation of "good cause"—it also requested "[a]ny further relief as the Court deems just and proper." *Id.,* ¶152.

Nor was the Ninth Circuit's approach justified by the history of this litigation. The District Court emphasized that "the heart of the parties' dispute" is whether the Second Amendment protects "the right to carry a loaded handgun in public, either openly or in a concealed manner." *Peruta* v. *County of San Diego*, 758 F. Supp. 2d 1106, 1109 (SD Cal. 2010). As the Ninth Circuit panel pointed out, "[petitioners] argue that the San Diego County policy in light of the California licensing scheme *as a whole* violates the Second Amendment because it precludes a responsible, law-abiding citizen from carrying a weapon in public for the purpose of lawful self-defense in *any* manner." 742 F. 3d, at 1171. The panel further observed that although petitioners "focu[s]" their challenge on the "licensing scheme for concealed carry," this is "for good reason: acquiring such a license is the only practical avenue by which [they] may come lawfully to carry a gun for self-defense in San Diego County." *Ibid.* Even the en banc court acknowledged that petitioners "base their argument on the entirety of California's statutory scheme" and "do *not* contend that there is a free-standing Second Amendment right to carry concealed firearms." 824 F. 3d, at 927.

## B

Had the en banc Ninth Circuit answered the question actually at issue in this case, it likely would have been compelled to reach the opposite result. This Court has

already suggested that the Second Amendment protects the right to carry firearms in public in some fashion. As we explained in *Heller*, to "bear arms" means to "'wear, bear, or carry upon the person or in the clothing or in a pocket, for the purpose of being armed and ready for offensive or defensive action in a case of conflict with another person.'" 554 U. S., at 584 (quoting *Muscarello* v. *United States*, 524 U. S. 125, 143 (1998) (GINSBURG, J., dissenting); alterations and some internal quotation marks omitted). The most natural reading of this definition encompasses public carry. I find it extremely improbable that the Framers understood the Second Amendment to protect little more than carrying a gun from the bedroom to the kitchen. See *Drake* v. *Filko*, 724 F. 3d 426, 444 (CA3 2013) (Hardiman, J., dissenting) ("To speak of 'bearing' arms solely within one's home not only would conflate 'bearing' with 'keeping,' in derogation of the [*Heller*] Court's holding that the verbs codified distinct rights, but also would be awkward usage given the meaning assigned the terms by the Supreme Court"); *Moore* v. *Madigan*, 702 F. 3d 933, 936 (CA7 2012) (similar).

The relevant history appears to support this understanding. The panel opinion below pointed to a wealth of cases and secondary sources from England, the founding era, the antebellum period, and Reconstruction, which together strongly suggest that the right to bear arms includes the right to bear arms in public in some manner. See 742 F. 3d, at 1153–1166 (canvassing the relevant history in detail); Brief for National Rifle Association as *Amicus Curiae* 6–16. For example, in *Nunn* v. *State*, 1 Ga. 243 (1846)—a decision the *Heller* Court discussed extensively as illustrative of the proper understanding of the right, 554 U. S., at 612—the Georgia Supreme Court struck down a ban on open carry although it upheld a ban on concealed carry. 1 Ga., at 251. Other cases similarly suggest that, although some regulation of public carry is

permissible, an effective ban on all forms of public carry is not. See, *e.g., State* v. *Reid*, 1 Ala. 612, 616–617 (1840) ("A statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defence, would be clearly unconstitutional").

Finally, the Second Amendment's core purpose further supports the conclusion that the right to bear arms extends to public carry. The Court in *Heller* emphasized that "self-defense" is "the *central component* of the [Second Amendment] right itself." 554 U. S., at 599. This purpose is not limited only to the home, even though the need for self-defense may be "most acute" there. *Id.,* at 628. "Self-defense has to take place wherever the person happens to be," and in some circumstances a person may be more vulnerable in a public place than in his own house. Volokh, Implementing the Right To Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda, 56 UCLA L. Rev. 1443, 1515 (2009).

## C

Even if other Members of the Court do not agree that the Second Amendment likely protects a right to public carry, the time has come for the Court to answer this important question definitively. Twenty-six States have asked us to resolve the question presented, see Brief for Alabama et al. as *Amici Curiae*, and the lower courts have fully vetted the issue. At least four other Courts of Appeals and three state courts of last resort have decided cases regarding the ability of States to regulate the public carry of firearms. Those decisions (plus the one below) have produced thorough opinions on both sides of the issue. See *Drake*, 724 F. 3d 426, cert. denied *sub nom. Drake* v. *Jerejian*, 572 U. S. ___ (2014); 724 F. 3d, at 440 (Hardiman, J., dissenting); *Woollard* v. *Gallagher*, 712 F. 3d 865 (CA4), cert. denied, 571 U. S. ___ (2013); *Ka-*

*chalsky* v. *County of Westchester*, 701 F. 3d 81 (CA2 2012), cert. denied *sub nom. Kachalsky* v. *Cacace*, 569 U. S. ___ (2013); *Madigan*, 702 F. 3d 933; *id.,* at 943 (Williams, J., dissenting); *Commonwealth* v. *Gouse*, 461 Mass. 787, 800–802, 965 N. E. 2d 774, 785–786 (2012); *Williams* v. *State*, 417 Md. 479, 496, 10 A. 3d 1167, 1177 (2011); *Mack* v. *United States*, 6 A. 3d 1224, 1236 (D. C. 2010). Hence, I do not see much value in waiting for additional courts to weigh in, especially when constitutional rights are at stake.

The Court's decision to deny certiorari in this case reflects a distressing trend: the treatment of the Second Amendment as a disfavored right. See *Friedman* v. *Highland Park*, 577 U. S. ___, ___ (2015) (THOMAS, J., dissenting from denial of certiorari) (slip op., at 6) ("The Court's refusal to review a decision that flouts two of our Second Amendment precedents stands in marked contrast to the Court's willingness to summarily reverse courts that disregard our other constitutional decisions"); *Jackson* v. *City and County of San Francisco*, 576 U. S. ___, ___ (2015) (same). The Constitution does not rank certain rights above others, and I do not think this Court should impose such a hierarchy by selectively enforcing its preferred rights. *Id.*, at ___ (slip op., at 1) ("Second Amendment rights are no less protected by our Constitution than other rights enumerated in that document"). The Court has not heard argument in a Second Amendment case in over seven years—since March 2, 2010, in *McDonald* v. *Chicago*, 561 U. S. 742. Since that time, we have heard argument in, for example, roughly 35 cases where the question presented turned on the meaning of the First Amendment and 25 cases that turned on the meaning of the Fourth Amendment. This discrepancy is inexcusable, especially given how much less developed our jurisprudence is with respect to the Second Amendment as compared to the First and Fourth Amendments.

THOMAS, J., dissenting

\*　　\*　　\*

For those of us who work in marbled halls, guarded constantly by a vigilant and dedicated police force, the guarantees of the Second Amendment might seem antiquated and superfluous. But the Framers made a clear choice: They reserved to all Americans the right to bear arms for self-defense. I do not think we should stand by idly while a State denies its citizens that right, particularly when their very lives may depend on it. I respectfully dissent.