LEANNE JOHNSON; Justice,
concurring.
In this pretrial habeas proceeding, Poe challenges section 42.01(a)(8)[1] of the disorderly conduct statute and argues -that the statute is facially unconstitutional and unconstitutionally vague. I agree with the majority’s conclusion to overrule Poe’s facial constitutional challenges and his challenge that, the -statute is unconstitutionally vague. I write separately from the majority to- clarify the basis for my conclusion that Poe has failed to meet his heavy burden to establish-a facial challenge to the statute.

Facial Constitutional Challenges

A defendant may file a pretrial application, for writ of habeas corpus in order to *356 raise a facial challenge to the constitutionality of the statute under which the defendant is charged. Ex parte Thompson, 442 S.W.3d 325, 333 (Tex.Crim.App.2014). Whether a statute is facially unconstitutional is a question of law subject to de novo review. Ex parte Lo, 424 S.W.3d 10, 14 (Tex.Crim.App.2013). When the constitutionality of a statute is attacked, a court usually must presume that the statute is valid and that the Legislature has not acted unreasonably or arbitrarily. Id. at 15. With respect to constitutional provisions other than the First Amendment, a facial challenge to the constitutionality of a statute will succeed only if it is shown that the statute is unconstitutional in all of its applications. State v. Johnson, 475 S.W.3d 860, 864 (Tex.Crim.App.2015). With respect to facial challenges that pertain to an activity or speech protected by the First Amendment, the challenger may also bring a “substantial overbreadth” challenge. United States v. Stevens, 559 U.S. 460, 473, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010). Under the “substantial overbreadth” doctrine, the statute may be invalidated as overbroad if “a substantial number of its applications are unconstitutional, judged in relation to the statute’s plainly legitimate sweep.” Id. The “substantial overbreadth” challenge may be made when a statute restricts or punishes speech based upon its content. Ex parte Lo, 424 S.W.3d at 15. There is no recognized application of the “substantial overbreadth” doctrine to any challenge outside of certain First Amendment challenges. McGruder v. State, 483 S.W.3d 880, 883, 2016 WL 736181, at *2 (Tex.Crim.App.2016) (citing United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); Briggs v. State, 789 S.W.2d 918, 923 (Tex.Crim.App.1990); State ex rel. Lykos v. Fine, 330 S.W.3d at 904, 909 & n. 13 (Tex.Crim.App.2011)).
The overbreadth doctrine is “strong medicine” that is used “sparingly and only as a last resort.” Johnson, 475 S.W.3d at 865 (citing New York State Club Ass’n v. City of New York, 487 U.S. 1, 14, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988); Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); Ex parte Thompson, 442 S.W.3d at 349)). When making a “substantial overbreadth” challenge under the First Amendment, the -challenger must establish that the statute as written “prohibit[s] a substantial amount of protected expression, and the danger that the statute will be unconstitutionally applied must be realistic and not based on ‘fanciful hypotheticals.’ ” Id. (footnotes omitted) (quoting Stevens, 559 U.S. at 485, 130 S.Ct. 1577 (Alito, J., dissenting)). Therefore, Poe must demonstrate “ ‘that a substantial number of instances exist in which the Law cannot be applied constitutionally,’ ” See id. (quoting New York Club Ass’n, 487 U.S. at 14, 108 S.Ct. 2225). “The Supreme Court generally does not apply the ‘strong medicine’ of overbreadth analysis where the parties fail to describe the instances of arguable over-breadth of the contested law.” Id. (quoting, Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449-450, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008)).

Poe’s First Amendment Challenge

Poe argues that section 42.01(a)(8) is facially unconstitutional because the statute infringes upon his First Amendment[2] right to freedom of speech. While I agree with the majority that as written section *357 42.01(a)(8) appears to regulate conduct rather than speech, the display of a weapon could, in -some instances, be connected to the exercise of free speech. Expressive conduct may, in some instances, run afoul of the First Amendment, and some statutes that prohibit such conduct may indeed be facially unconstitutional. See, United States v. Eichman, 496 U.S. 310, 110 S.Ct. 2404, 110 L.Ed.2d 287. (1990); Texas v. Johnson, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989); State v. Johnson, 475 S.W.3d at 882 (“[T]he Texas flag-destruction statute,' by its text and in actual fact, prohibits a substantial amount of activity that is protected by the First Amendment, judged in relation to its legitimate sweep. Consequently, we hold that the Texas flag-destruction statute is facially invalid because it is unconstitutionally overbroád in violation of the First Amendment.”).
On the other hand, not all types of speech or expressive conduct are protected by the First Amendment. See Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (“fighting words” constitute “no essential part of any exposition of ideas,” and therefore are not protected by the First Amendment); R.A.V. v. City of St. Paul, 505 U.S. 377, 386, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (Scalia, J., writing for the majority explained that “the exclusion of ‘fighting words’ from the scope of the First Amendment simply means that, for purposes of that Amendment, the unprotected features of the words are, despite their verbal character, essentially a ‘nonspeech’ element of communication. Fighting words are thus analogous to.a noisy sound truck: Each is, as Justice Frankfurter recognized, a ‘mode of speech,’ [citation ■ omitted] both can be used to convey an idea; but-neither has-, in and of itself, a claim upon the First Amendment.”).
In R.A.V. v. City of St. Paul, the Supreme Court examined á statute that prohibited certain expressive conduct that included racially motivated cross burning or displays and behavior that the Supreme Court described as “reprehensible.” 505 U.S. at 396, 112 S.Ct. 2538. Therein, several teenagers, including the petitioner, allegedly assembled and burned a cross inside the fenced yard of a family that lived a,cross the street from the petitioner. The City could have charged the petitioner with several different criminal violations, but petitioner was charged with a violation of the St. Paul “Bias-Motivated Crime Ordinance,” St. Paul, Minn., Legis. Code § 292.02 (1990). According to the majority, even though the expression that wás reached by the statute might be proscriba-ble under the “fighting words” doctrine, the court “nonetheless conclude[d] that the ordinance is facially unconstitutional in that it prohibits otherwise permitted speech solely on the basis of the subjects the speech addresses.” Id. at 381, 112 S.Ct. 2538.
Nevertheless, when the intent as outlined within a statute “is to do something that, if accomplished, would be unlawful and outside First Amendment protection, such as the intent to threaten or intimidate, such an intent might help to eliminate First Amendment concerns.” Ex parte Thompson, 442 S.W.3d at 338. For example, in Scott v. State, 322 S.W.3d 662, 669-70 (Tex.Crim.App.2010),[3] the Court of *358 Criminal Appeals upheld the harassment statute section 42.07(a)(4), and concluded that the statute is not unconstitutionally vague and that it does not'implicate the free speech guarantee under the First Amendment, as it is directed only at someone who with the specific intent to inflict emotional distress, repeatedly uses the telephone to invade the personal privacy of another person in a manner reasonably likely to inflict emotional distress. In contrast, in Ex parte Thompson, the Court of Criminal Appeals struck down the “Improper Photography or Visual Recording” statute because “to the extent it proscribes the taking of photographs and the recording of visual images, [it] is unconstitutional on its face in violation of the Free Speech clause of the First Amendment,” See 442 S.W.3d at 330, 351. The photography statute expressly covered all photographs other than those taken in a bathroom or private dressing room, and it was therefore “designed as a catch-all, to reach other situations in which photography and visual recordings' ought to be prohibited.” Id. at 349.
In comparison to the “Bias -Motivated” statute in R.A.V. v. City of St. Paul, or the flag destruction statutes in Texas v. Johnson and State v. Johnson, and the photography statute in Ex parte Thompson, the statute that Poe is charged under is more analogous to the harassment statute' in Scott v. State. Section 42.01(a)(8) does not prohibit a person from "using a symbol as part of expressive conduct, does not prohibit “otherwise permitted speech solely on the basis of the subjects the speech addresses,” and it does not act as a catch-all provision to reach expressive conduct. Rather, the plain language in section 42.01(a)(8) prohibits conduct that, if accomplished, would be unlawful and outside First Amendment protection, in' that it criminalizes an intentional or knowing act that is done in a manner calculated to alarm, and would not be substantially protected by the First Amendment. Accordingly, I agree with the majority that the statute as written regulates conduct and not speech. See generally State v. Paquette, No. 09-15-00361-CR, 487 S.W.3d 286, 287-90, 2016 WL 747243, at *2-3 (Tex.App.-Beaumont Feb. 24, 2016, no pet.) (discussing online solicitation provision and rejecting overbreadth challenge to Tex. Penal Code section 33.021(c) under the First Amendment); Ex parte Victonck, No. 09-13-00551-CR, 2014 WL 2152129, at **2-7, 2014 Tex.App. LEXIS 5429, at **6-18 (Tex.App.-Beaumont May 21, 2014, pet. ref'd) (mem. op., not designated for publication), cert. denied, Victorick v. Texas, - U.S. -, 135 S.Ct. 1557, 191 L.Ed.2d 638 (2015).
■ Poe hás failed to establish that the statute in question prohibits a substantial amount of activity that is protected by the First Amendment, judged in relation to its plainly legitimate sweep. Accordingly, I agree with the decision of the majority to overrule Poe’s First Amendment challenge to the statute. We expressly do not decide whether the statute is unconstitutional as applied to Poe.[4]

*359
Poe’s Second Amendment Challenge

With respect to Poe’s challenge under the Second Amendment, in my opinion, the Court must analyze this challenge separately from the First Amendment because the “substantial overbreadth” doctrine would not apply to Poe’s Second Amendment challenge.
The framers of the United States Constitution expressly recognized the right of the people to “keep and bear [a]rms[.]” See U.S. Const. amend. II (“A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.”). The Second Amendment extends to and protects an individual right to keep and bear arms and the Second Amendment is fully applicable to the States. Caetano v. Massachusetts, - U.S. -, 136 S.Ct. 1027, 1027-28, 194 L.Ed.2d 99 (2016) (per curiam) (citing District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) and McDonald v. City of Chicago, 561 U.S. 742, 750, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010)).
In Heller, the United States Supreme Court held that the District of Columbia’s statute that prohibited the- possession of handguns in the home, as well as its provision requiring handguns to be inoperable if kept in the home, violated the right guaranteed to the individual by. the Second Amendment to the Federal Constitution. 554 U.S. at 635,128 S.Ct. 2783. Nevertheless, as stated by Justice Scalia in the Heller majority opinion, the fundamental right secured- by the Second Amendment is not unlimited.
Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-cen-tury cases, commentators' and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. [] For example, the majority of the 19th-centu-ry courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. [] Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.
Id. at 626-27, 128 S.Ct. 2783 (internal citations and footnote omitted).
The Heller majority explained that the ruling was consistent with the earlier case of United States v. Miller, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939). See id. at 621-23, 128 S.Ct. 2783. According to Heller, “Miller stands only for the proposition that the Second Amendment right, whatev *360 er its nature, extends only to certain types of weapons.” Id, at 623, 128 S.Ct. 2783. In Miller, the defendant was charged with illegally possessing a short-barreled shotgun and the Supx-eme Court rejected his challenge that the state statute prohibiting the possession of such weapons was in violation of the right to “keep and bear arms” guaranteed by the Second Amendment. 307 U.S. at 175-77, 182-83, 59 S.Ct. 816. Nevertheless, it would be wrong to conclude that the scope of the Second Amendment applies only to those weapons useful in warfare. As noted by the Heller majority, there may be some weapons like machine guns, for example, that would be useful in warfare but are not typically possessed by law abiding citizens for law abiding purposes. 554 U.S. at 624, 128 S.Ct. 2783. The majority concluded that the operative clause in the Second Amendment, “the right of the people to keep and bear Arms, shall not be infringed!,]” is not limited by the introductory or prefatory clause which references a “well regulated Militiaf.]” See id. at 577-78, 128 S.Ct. 2783. “[Tjhe Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding.” Id. at 582, 128 S.Ct. 2783. However, the majority emphasized that the right to “keep and bear arms” does not import a right to “keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.” See id. at 626, 128 S.Ct. 2783.
In 2010, the United States Supreme Court held that the Second Amendment’s protections apply fully to the states. McDonald, 561 U.S. at 750, 130 S.Ct. 3020. In McDonald, the Supreme Court examined whether the Second Amendment applied to a Chicago law that banned handguns in the home. Id. at 750-53, 130 S.Ct. 3020. The McDonald majority, authored by Justice Alito, stated:
Two years ago, in District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), we held that [1] the Second Amendment protects the right to keep and bear arms for the purpose of self-defense, and we struck down a District of Columbia law that banned the possession of handguns in the home. The city of Chicago (Chicago or City) and the village of Oak Park, a Chicago suburb, have laws that are similar to the District of Columbia’s, but Chicago and Oak Park argue that their law's are constitutional because the Second Amendment has no application to the States. We have previously held that [2] most of the provisions of the Bill of Rights apply with full force to both the Federal Government and the States. Applying the standard that is well established in our case law, we hold that [3] the Second Amendment right is fully applicable to the States.
Id. at 749-50, 130 S.Ct. 3020. The Supreme Court again noted, as previously discussed in Heller, the Second Amendment right to “keep and bear arms” is not unlimited and again referenced the “longstanding” regulations discussed in Heller. McDonald, 561 U.S. at 786, 130 S.Ct. 3020 (citing Heller, 554 U.S. at 626-27, 128 S.Ct. 2783).
In Jackson v. City and County of San Francisco, - U.S. -, 135 S.Ct. 2799, 192 L.Ed.2d 865 (2015), in a 7-2 decision, the Supreme Court denied the petition for writ of certiorari wherein the petitioners sought to enjoin a San Francisco Police Code provision that provides that no person shall keep a handgun within a residence owned or controlled by that person unless the gun is stored in a locked container or with a trigger lock, as well as other limitations. In a dissent authored by Justice Thomas and joined by Justice Scalia, the dissent argued that the lower *361 appellate court’s decision was questionable, and the dissent would have granted the petition in light of Heller. 135 S.Ct. at 2799-2802 (Thomas, J., dissenting).
In Friedman v. City of Highland Park, — U.S. -, 136 S.Ct. 447, 193 L.Ed.2d 483 (2015), in a 7-2 decision, the Supreme Court denied the petition for writ of certio-rari and refused to review the ruling of the Seventh Circuit Court of Appeals upholding an ordinance in the City of Highland Park, Illinois, which included a ban on semiautomatic firearms such as the AR-15 rifle. In a dissent once again authored by Justice Thomas and joined by Justice Sea-lia, the dissent argued that the ban was directly in violation of Heller, and the dissent would have granted the petition. 136 S.Ct. at 447 (Thomas, J. dissenting). The dissent explained that law-abiding citizens carry and possess such weapons for self-defense and target shooting, and it should not matter whether law-abiding citizens might have other firearms they could use for such purposes. Id. at 448-50. Furthermore, the dissent noted there is a distinction between such firearms and sawed-off shotguns, which are not commonly used by law abiding citizens for lawful purposes. Id. at 449. The dissent stated “[i]f a broad ban on firearms can be upheld based on conjecture that the public might feel safer (while being no safer at all), then the Second Amendment guarantees nothing.” Id.
Most recently, in Caetano v. Massachusetts, in a per curiam decision, the Supreme Court followed Heller, and concluded that the Second Amendment applied to a Massachusetts law prohibiting the possession of stun guns. 136 S.Ct. at 1027-28. The Supreme Court held that the Second Amendment’s protections include the right of an individual to carry a stun gun for self-defense. Id. at 1028. The Supreme Court reaffirmed its previous analysis in Heller that the Second Amendment protects the individual right to “keep and bear arms” even with respect to weapons like stun guns that were not traditionally used in warfare. Id.; Heller, 554 U.S. at 624-25, 128 S.Ct. 2783.
Heller, when read in conjunction with Caetano, confirms that the Second Amendment right to keep and bear arms necessarily includes the individual right of law-abiding citizens to keep and bear arms (firearms and other weapons such as “stun-guns”) for self-defense. See Caetano, 136 S.Ct. at 1028; McDonald, 561 U.S. at 749-50, 130 S.Ct. 3020; Heller, 554 U.S. at 635, 128 S.Ct. 2783.[5] Nevertheless, we also know that the Second Amendment right to “keep and bear arms” does not import a right to “keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.” Heller, 554 U.S. at 626, 128 S.Ct. 2783. Heller expressly did not “undertake an exhaustive historical analysis [] of the full scope of the Second Amendment!.]” Id. Similarly, in the matter now before us, this Court need not engage in an exhaustive discussion regarding the full scope of the Second Amendment. Rather, the issue before us today is whether section 42.01(a)(8) of the disorderly conduct statute is facially unconstitutional under the Second Amendment.
The statutory provision that Poe challenges prohibits a person from “intentionally or knowingly ... displaying] a firearm or other deadly weapon in a public *362 place in a maimer calculated'to alarm[.]” “[T]o prevail on a facial challenge” under the Second Amendment, Poe had the burden to “establish that" the statute always operates unconstitutionally in all possible circumstances.” See State v. Rosseau, 396 S.W.3d 550, 557 (Tex.Crim.App.2013). Poe has failed to establish that the statute on its face as written always operates in all possible circumstances to unconstitutionally infringe upon the rights guaranteed under the Second Amendment. See Salinas v. State, 464 S.W.3d 363, 367 (Tex.Crim.App.2015). Therefore, I agree with the decision of the majority to overrule Poe’s facial challenge under the Second Amendment. We expressly do not decide whether the statute is unconstitutional as applied to Poe.[6]

Poe’s Challenge under the Fifth Amendment and State Constitution

Poe fails to include any argument in his brief pertaining to his allegations that the statute is facially unconstitutional pursuant to the Fifth Amendment to the- United States Constitution and he fails to include any specific argument regarding his claim under Article I, Sections 8,10,19 and 23 of the Texas Constitution.
The “brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.” Tex. R. App. P. 38.1(i). Conclusory arguments that cite no authority present nothing for our review. See Lucio v. State, 351 S.W.3d 878, 896 (Tex.Crim.App.2011); Vuong v. State, 830 S.W.2d 929, 940 (Tex.Crim.App.1992); Atkins v. State, 919 S.W.2d 770, 774-75 (Tex.App.-Houston [14th Dist.] 1996, no pet.). Accordingly, I would also overrule Poe’s challenge with respect to the Fifth Amendment, and Article I, Sections 8, 10, 19 and 23 of the Texas Constitution.
I concur in the majority’s decision to overrule Poe’s issues and to affirm the trial court’s order denying Poe’s application for writ of habeas corpus.

. Tex. Penal Code Ann. § 42.01(a)(8) (West Supp.2015) (see Majority Opinion at n.l for further reference). The relevant statutory language is as follows:
§ 42.01. Disorderly Conduct
(a) A person commits an offense if he intentionally or knowingly:
[[Image here]]
(8) displays a firearm or other deadly weapon in a public place in a manner calculated to alarmf]

. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.” U.S. Const, amend. I.

. In Wilson v. State, 448 S.W.3d 418, 423 (Tex.Crim.App.2014), the Court of Criminal Appeals disavowed a footnote contained in Scott which related to the term "repeated,” and the Court provides further guidance on use of the phrase "repeated telephone communications.” Justice Keller, joined by Justice Johnson, indicates that in light of the "abandonment' of some of the rationales in Scott" the Court should, "when the issue is raised again, re-evaluate” its holding in Scott. Id. at 426-27 (Keller, J., concurring).

. A facial challenge to the constitutionality of a statute must generally assert that there are no factual circumstances under which the statute would be constitutional. See State ex rel. Lykos v. Fine, 330 S.W.3d 904, 909 (Tex.Crim.App.2011). When making a facial challenge, evidence regarding how the statute operates in practice is irrelevant. Id. at 908-09. In a facial challenge, we consider how the statute is written rather than how it operates . or is applied in, practice. Salinas v. State, 464 S.W.3d 363, 367 (Tex.Crim.App.2015), The Court of Criminal Appeals has cautioned against the use of pretrial'writs to adjudicate certain constitutional challenges. See Ex parte Weise, 55 S.W.3d 617, 620 (Tex.Crim.App.2001) (pretrial habeas may not be available for “as applied” challenge but may be *359 available when facial challenge to constitu- - tionality of statute is made); see also Ex parte Perry, No. PD-1067-15, 483 S.W.3d 884, 890-92, 2016 WL 738237, at **2-3, 2016 Tex.Crim.App. LEXIS 43, at **7-8 (Tex.Crim.App. Feb. 24, 2016) (explaining in further detail instances where a pretrial habeas challenge might be available for particular "as-applied” challenges). I express no opinion as to an “as-applied” challenge, and note that a party generally has a different burden to establish an; "as-applied” challenge. See Combs v. STP Nuclear Operating Co., 239 S.W.3d 264, 272 (Tex.App.-Austin 2007, pet. denied) ("[A] party making an as-applied challenge need only show that the statute is unconstitutional because of the manner in which it was applied in a particular case.” An as-applied challenge is "fact specific!)]”).

. Justice Thomas has also acknowledged that firearms such as "modern sporting rifles {e.g., AR-style semiautomatic rifles)” are owned by many Americans "for lawful purposes like self-defense, hunting, and target shooting.” Friedman v. City of Highland Park, - U.S. -, 136 S.Ct. 447, 447-50, 193 L.Ed.2d 483 (2015) (Thomas, J. dissenting). In the case at bar, Poe was carrying an AR-15 rifle.

. See n.3.