# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2529

_____

United States of America,

*Plaintiff - Appellee*

v.

Alonzo L. Adams,

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 22, 2017
Filed: January 29, 2019

_____

Before COLLOTON, BENTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A grand jury charged Alonzo Adams with unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). After the district court[1] denied his motion to dismiss the indictment, Adams conditionally pleaded

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, adopting a report and recommendation of the Honorable John

guilty. On appeal, Adams argues that the district court erred by denying his motion, because § 922(g)(1) as applied to him is unconstitutional under the Second Amendment. Adams, however, failed even to address one element of his as-applied challenge in the district court, and he therefore forfeited his claim. There was no plain error in denying the motion to dismiss, so we affirm.

Adams's instant conviction arose from a traffic stop in Kansas City, Missouri, in July 2014. Police officers pulled him over for failure to stop at a stop sign. After Adams told police that he was driving to meet his probation officer, the officers asked to search the vehicle. Adams consented to the search, and police discovered a handgun on the floor board under the driver's seat. Adams denied that the handgun belonged to him, but lab analysis found his DNA on the trigger and magazine.

A grand jury charged him with unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). Adams had sustained a prior felony conviction in Missouri for carrying a concealed weapon. Adams moved to dismiss the indictment on the ground that § 922(g)(1) is unconstitutional as applied to him. Adams argued that *District of Columbia v. Heller*, 554 U.S. 570 (2008), did not categorically exclude "non-violent felons" from Second Amendment protection. And he asserted that a conviction for carrying a concealed weapon is a non-violent felony. He then urged that § 922(g)(1) is unconstitutional as applied to him, because a permanent ban on firearms possession by a "non-violent felon" is not narrowly tailored to the government's interest in public safety, so the prohibition did not satisfy strict scrutiny. The district court denied the motion on the ground that § 922(g)(1) serves an important governmental objective and satisfies intermediate scrutiny as applied to Adams.

---

T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

Adams then pleaded guilty, and the district court sentenced him to 21 months' imprisonment with three years of supervised release. As part of the plea agreement, Adams reserved the right to appeal the district court's denial of his motion to dismiss.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. "[T]he Second Amendment protects the right to keep and bear arms for the purpose of self-defense." *McDonald v. City of Chicago*, 561 U.S. 742, 749-50 (2010). But "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. The Court in *Heller* said that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. These regulatory measures are "presumptively lawful." *Id.* at 627 n.26; *accord McDonald*, 561 U.S. at 786 (plurality opinion).

After *Heller* and *McDonald*, we rejected a facial challenge to § 922(g)(1)'s felon-in-possession ban. *See United States v. Joos*, 638 F.3d 581, 586 (8th Cir. 2011). But we have yet to address squarely whether § 922(g)(1) is susceptible to as-applied challenges. *See United States v. Woolsey*, 759 F.3d 905, 909 (8th Cir. 2014). An as-applied challenge asks the reviewing court to declare the disputed statute unconstitutional "on the facts of the particular case." *Sanjour v. EPA*, 56 F.3d 85, 92 n.10 (D.C. Cir. 1995). The as-applied challenger "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010). At a minimum, to succeed on an as-applied challenge, Adams must establish (1) that the Second Amendment protects his particular conduct, and (2) that his prior felony conviction is insufficient to justify the challenged regulation of Second Amendment rights.

Adams forfeited his claim by failing even to address the first point in the district court. Because Adams transported the handgun out of sight under his driver's seat, Adams must show that the Second Amendment protects a right to carry a weapon concealed in a vehicle. Yet Adams never advanced this contention, and the district court could have denied his motion based on this deficiency alone. Adams simply assumed the existence of a constitutional right to carry a concealed weapon in a vehicle and argued only that his particular felony conviction could not justify a lifetime ban on possession. For the first time on appeal, Adams contends that the Second Amendment protects a right to carry a concealed firearm outside the home. To obtain relief on a forfeited claim, however, Adams must show that the district court made an obvious error that affected substantial rights and seriously affected the fairness, integrity, or reputation of the judicial proceedings. *United States v. Olano*, 507 U.S. 725, 734-36 (1993). An asserted legal error does not meet this standard if the proposition is "subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009).

It is not plain or obvious that the Second Amendment protects Adams's conduct. There is at least reasonable dispute about whether the Second Amendment protects a right to carry a concealed weapon in a vehicle. The Supreme Court has described laws prohibiting concealed carry as a "well-recognized exception[]" to the right to keep and bear arms. *Robertson v. Baldwin*, 165 U.S. 275, 281-82 (1897). *Heller* cautioned that its holding did not recognize "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 554 U.S. at 626. As an example, the Court observed that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." *Id.* Relying on these decisions, one circuit has concluded that the Second Amendment does not protect a right to concealed carry. *See Peruta v. Cty. of San Diego*, 824 F.3d 919, 939 (9th Cir. 2016) (en banc), *cert. denied*, 137 S. Ct. 1995 (2017).

The history of prohibitions on concealed carry extends to the carrying of concealed weapons during travel. Even before cars and trucks, the Tennessee Supreme Court held that carrying a "navy six [pistol] in a scabbard hung to the horn of [a defendant's] saddle" was grounds to convict the defendant for unlawfully carrying a pistol "that can be carried lawfully only openly in the hands." *Barton v. State*, 66 Tenn. 105, 105-06 (Tenn. 1874). Similarly, the Alabama Supreme Court affirmed the conviction of a defendant who concealed a pistol in a handbasket that the defendant carried with him on a train car. *Diffey v. State*, 5 So. 576, 576 (Ala. 1889). After the advent of automobiles, the Court of Appeals for the District of Columbia upheld a conviction for carrying a concealed weapon under a vehicle seat. The court approved a jury instruction that said the governing statute applied if the defendant "had a pistol concealed in the automobile, though not on his person, but within his reach." *Brown v. United States*, 30 F.2d 474, 475 (D.C. Cir. 1929).

Several courts have discerned a meaningful distinction between open and concealed carrying in a vehicle. A California court emphasized that a concealed carry statute did not "prohibit the carrying of a firearm in a vehicle unless it be concealed," and concluded that a firearm could be carried openly inside the vehicle without violating the concealed carry law. *People v. Frost*, 12 P.2d 1096, 1097 (Cal. App. Dep't Super. Ct. 1932). On the other hand, carrying a firearm under a floor mat on the driver's side of a truck violates the California law on carrying a concealed weapon in a vehicle. *People v. Ellison*, 128 Cal. Rptr. 3d 245, 248-51 (Cal. Ct. App. 2011). Kentucky courts have ruled that a firearm carried inside the center console was concealed and violated Kentucky's concealed carry law, *see Mohammad v. Commonwealth*, 202 S.W.3d 589, 590-91 (Ky. 2006), while a firearm placed on top of the center console was not concealed and did not violate the statute. *See Pulley v. Commonwealth*, 481 S.W.3d 520, 525 (Ky. Ct. App. 2016); *see also Ensor v. State*, 403 So. 2d 349, 354-55 (Fla. 1981); *State v. Pettit*, 252 N.E.2d 325, 327-28 (Ohio Ct. App. 1969); *Shipley v. State*, 220 A.2d 585, 588-89 (Md. 1966); *State v. Bordeaux*, 337 S.W.2d 47, 49 (Mo. 1960).

-5-

To be sure, some have urged that concealed carrying of firearms is protected under the Second Amendment when the State forbids open carrying, on the view that it would be unconstitutional to prohibit all forms of bearing arms outside the home. *See Peruta*, 824 F.3d at 950-51 (Callahan, J., dissenting); *Peruta v. Cty. of San Diego*, 742 F.3d 1144, 1172-73 (9th Cir. 2014), *vacated and reh'g en banc granted*, 781 F.3d 1106 (9th Cir. 2015). Missouri, however, has no general ban on open carrying of firearms, *see* Mo. Rev. Stat. § 21.750.3 (Cumulative Supp. 2013), and Adams has directed us to no local law or ordinance that prohibited him from carrying a firearm openly in his vehicle.

In light of these authorities and the historical record to which we have been directed, Adams's contention that the Second Amendment protects a right to carry a concealed weapon in a vehicle is at least subject to reasonable dispute. Therefore, his as-applied challenge to § 922(g)(1) fails under the plain error standard. We disagree with the view of the concurring opinion that an as-applied challenger need not even show that he was engaged in constitutionally-protected conduct. Of course, the felon-in-possession statute does not require *the government* to prove the manner in which the defendant possessed a firearm. But a party who raises an as-applied constitutional challenge to a statute must show that the statute as applied in the particular circumstances of his case infringed on conduct that was constitutionally protected. *See Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973); *United States v. Raines*, 362 U.S. 17, 21-22 (1960). The overbreadth doctrine, under which a challenger may rely on the rights of others in situations not before the court, applies only in the limited context of the First Amendment. *New York v. Ferber*, 458 U.S. 747, 767-68 (1982). We need not address, therefore, whether Adams's prior felony conviction would have been sufficient to justify disqualifying him from enjoying rights guaranteed under the Second Amendment.

The judgment of the district court is affirmed.

KELLY, Circuit Judge, concurring in the judgment.

I agree that Adams's conviction for violating 18 U.S.C. § 922(g)(1) should be affirmed. I write separately because I disagree with how the court analyzes Adams's Second Amendment challenge. When presented with similar arguments, our sister circuits have used a sensible, two-pronged approach to consider whether application of § 922(g)(1) to a particular individual comports with the Constitution's protection of the right to keep and bear arms. Instead of following that sound approach, the court focuses on a factual circumstance not before the district court and not addressed by the parties: that Adams's firearm was "concealed." This fact, even if it were supported by the record, would not be relevant to Adams's conviction because § 922(g)(1) applies regardless of the manner in which the firearm is possessed. It likewise should have no bearing on his ability to argue that his conviction under that section is unconstitutional.

I

Section 922(g)(1) makes it unlawful for any person who has been convicted of "a crime punishable by imprisonment for a term exceeding one year"[2] to "possess in or affecting commerce, any firearm or ammunition." This offense has only three elements: "(1) a prior felony conviction; (2) knowing possession of a firearm; and (3) an interstate nexus." United States v. Jones, 266 F.3d 804, 813 (8th Cir. 2001). Adams asserts that the first element sweeps too broadly because it applies the ban to individuals like himself who were convicted of nonviolent offenses, in violation of the Second Amendment. Adams first raised this argument in a pretrial motion to dismiss his indictment. After the district court rejected his challenge, Adams entered

_____

[2]The phrase "crime punishable by imprisonment for a term exceeding one year" is defined to exclude violations of certain business regulations and certain state-law misdemeanors. 18 U.S.C. § 921(a)(20).

into a conditional guilty plea that preserved his right to renew his constitutional claim on appeal.

The court today concludes that Adams "forfeited" his Second Amendment challenge from the start because he never addressed where the firearm was located at the time he was pulled over. The court anchors its reasoning in a two-part test for an as-applied constitutional challenge like Adams's. A challenger must prove: "(1) that the Second Amendment protects his particular conduct, and (2) that his prior felony conviction is insufficient to justify the challenged regulation of Second Amendment rights." Supra at 3. The court then explains that Adams forfeited his claim because he failed to address how one aspect of his "particular conduct"—the location of the firearm—was constitutionally protected. Id. But the court cites no authority for the proposition that the "particular conduct" relevant to Adams's as-applied challenge included the firearm's location. There is thus no reason why Adams would have known he needed to address this fact. Likewise, the government has never argued that Adams's firearm was concealed or that his failure to address its location in his motion forfeited his right to challenge the constitutionality of his conviction, thus limiting our review under the plain-error doctrine.

The Supreme Court has cautioned that the "as-applied" label does not control what a party must plead or prove. Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 331 (2010); see Richard H. Fallon, Jr., As-Applied and Facial Challenges and Third-Party Standing, 113 Harv. L. Rev. 1321, 1339 (2000). Ultimately, what matters is that the remedy sought is properly "tailored to redress the plaintiff's particular injury." Gill v. Whitford, 138 S. Ct. 1916, 1934 (2018). Here, Adams's "particular injury" is his § 922(g)(1) conviction, and we should limit our analysis to the facts that trigger that criminal sanction, *i.e.*, the facts that the government needed to prove in order to apply the statute to this case. There is no precedent requiring Adams to prove that every aspect of his conduct was constitutionally protected.

-8-

The government was not required to prove that Adams possessed a firearm in a concealed manner because Congress did not make that an element of the felon-in-possession offense. And § 922 contains no other general prohibition on carrying concealed firearms. Thus, if Adams is correct and § 922(g)(1) cannot apply to him, then his possession of the firearm—concealed or open—was not prohibited by federal law. By focusing on the assertion that Adams carried a concealed firearm, the court addresses a hypothetical as-applied challenge to a hypothetical concealed-carry statute. Cf. Raines, 362 U.S. at 21 (holding that courts should "never . . . anticipate a question of constitutional law in advance of the necessity of deciding it"). There may not be, as the court explains, a protected right under the Second Amendment to carry a concealed firearm. But this analysis merely suggests that Congress *could* pass a concealed-carry statute without running afoul of the Second Amendment. It has nothing to do with whether Adams can be prosecuted under § 922(g)(1) for being a felon-in-possession, unless we "inva[de] . . . the legislative domain" by adding a concealment requirement to the statute. Ayotte v. Planned Parenthood of N. New Eng., 546 U.S. 320, 330 (2006) (quoting United States v. Nat'l Treasury Emps. Union, 513 U.S. 454, 479 n.26 (1995)).

Moreover, at the time it denied his motion to dismiss, the district court did not have sufficient evidence to determine whether Adams's conduct would have violated a hypothetical concealed-carry statute. At that point, the only information before the district court was the indictment and the facts that Adams conceded in his motion. Neither the indictment nor the motion mentioned the location of the firearm or whether the firearm was "concealed." The only evidence in the record on this issue comes from the plea agreement and the presentence report—both of which did not exist until after Adams's constitutional challenge was briefed, argued, and decided. The indictment's silence on the issue confirms that the location of the firearm was not one of the "essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1), making it immaterial to whether Adams could be convicted under § 922(g)(1).

In short, the court's inquiry into other facts surrounding Adams's offense is an unnecessary diversion from the question that he asks us to decide. It also lacks the benefit of briefing from the parties—before the district court and on appeal—which only further counsels in favor of limiting our analysis to the facts necessary to prove the statutory elements as written in § 922(g)(1). As discussed below, when faced with similar challenges to this same statute, every circuit has done precisely that. I would follow their example.

II

The Supreme Court has instructed that "the Second Amendment conferred an individual right to keep and bear arms." Heller, 554 U.S. at 595. That right, like the First Amendment's right to free speech, is "not unlimited." Id. At the core of the right recognized in Heller is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." Id. at 635. In particular, the Court noted that its opinion should not "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id. at 626–27. It characterized these "presumptively lawful regulatory measures," id. at 627 n.26, as similar to recognized "exceptions" to the First Amendment's protections—"obscenity, libel, and disclosure of state secrets." Id. at 635.

Most circuits have adopted a two-part test for evaluating Second Amendment cases following Heller. First, they "ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010). If the law does, they "evaluate the law under some form of means-end scrutiny." Id.; accord Pena v. Lindley, 898 F.3d 969, 975 (9th Cir. 2018); United States v. Focia, 869 F.3d 1269, 1285 (11th Cir. 2017); Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, &

Explosives, 700 F.3d 185, 194 (5th Cir. 2012); United States v. Greeno, 679 F.3d 510, 518 (6th Cir. 2012); United States v. Carter, 669 F.3d 411, 416 (4th Cir. 2012); Heller v. District of Columbia, 670 F.3d 1244, 1252 (D.C. Cir. 2011); Ezell v. City of Chicago, 651 F.3d 684, 703 (7th Cir. 2011); United States v. Reese, 627 F.3d 792, 801 (10th Cir. 2010).

Applying this framework, the first question is whether § 922(g)(1) burdens the constitutional right as articulated in Heller. Due to Heller's admonition that laws forbidding the possession of firearms by those with prior felony convictions are "presumptively lawful," we have repeatedly rejected facial constitutional challenges to § 922(g)(1). See, e.g., Woolsey, 759 F.3d at 909; Joos, 638 F.3d at 586. Although this forecloses the argument that § 922(g)(1) is "unconstitutional in all or nearly all of its applications," United States v. Booker, 543 U.S. 220, 274 (2005), we have left open the possibility that, as to some class of persons, § 922(g)(1) may be unconstitutional, Woolsey, 759 F.3d at 909. In United States v. Brown, 436 F. App'x 725, 726 (8th Cir. 2011) (per curiam), we cited with approval the standard adopted by the Third Circuit in United States v. Barton for as-applied challenges to this statute:

> To raise a successful as-applied challenge, [a defendant] must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections. For instance, a felon convicted of a minor, non-violent crime might show that he is no more dangerous than a typical law-abiding citizen. Similarly, a court might find that a felon whose crime of conviction is decades-old poses no continuing threat to society.

633 F.3d 168, 174 (3d Cir. 2011).

The language used in Barton suggested that individuals convicted of "non-violent" felonies may be able to establish that they are not "dangerous" and thus should not be entirely outside of the Second Amendment's protections. However, five years later, in a fractured opinion, the Third Circuit overruled Barton sitting en banc. Binderup v. Attorney Gen., 836 F.3d 336, 349 (3d Cir. 2016) (en banc). In Binderup, the controlling plurality opinion concluded that Heller recognized that the right to bear arms may be nonexistent not just for "violent felons" but for "any person who has committed a serious criminal offense, violent or nonviolent." Id. at 348; see also id. at 349 ("[A]nyone who commits a serious crime loses the right to keep and bear arms . . . .").

Binderup comports with our conclusion that the Second Amendment reflects "a common-law tradition that the right to bear arms is limited to peaceable or virtuous citizens," a group that would not include those with felony convictions. United States v. Bena, 664 F.3d 1180, 1184 (8th Cir. 2011); accord United States v. Carpio-Leon, 701 F.3d 974, 979 (4th Cir. 2012) ("[T]he core right of the Second Amendment protects law-abiding members of the political community . . . ."); United States v. Yancey, 621 F.3d 681, 684–85 (7th Cir. 2010) (per curiam) ("[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'" (quoting United States v. Vongxay, 594 F.3d 1111, 1118 (9th Cir. 2010))). This is why we concluded that it was "most likely" that the "presumptively lawful" regulatory measures listed in Heller, including prohibitions on possession of firearms by those with felony convictions, simply "do not infringe on the Second Amendment right." Bena, 664 F.3d at 1183.

We have previously affirmed convictions under § 922(g)(1) on a rationale consistent with the conclusion that those convicted of felony offenses do not possess Second Amendment rights—albeit at times in unpublished opinions. In United States v. Hughley, we rejected an as-applied challenge to § 922(g)(1) brought by a defendant

-12-

with nonviolent felony predicates. 691 F. App'x 278 (8th Cir. 2017) (per curiam), cert. denied, 138 S. Ct. 983 (2018). We noted that the statute's purpose clearly and deliberately "reaches beyond felons who have proven themselves violent—that is, those who have already committed violent felonies"—to cover all those convicted of "serious crimes." Id. at 279–80. Because the defendant in Hughley had multiple nonviolent felony convictions, including one for possession of a concealed weapon, we concluded that he had not shown that he was "no more dangerous than a typical law-abiding citizen" entitled to Second Amendment protections. Id. at 279.

In light of our decisions in Bena and Hughley, I would conclude that Adams's challenge fails at the first step of the Marzzarella framework. The Supreme Court's characterization of felon-in-possession statutes as akin to the First Amendment's historical "exceptions" for obscenity, libel, and disclosure of state secrets suggests that it views those convicted of felonies as falling outside the scope of the Second Amendment's protections. See Medina v. Whitaker, No. 17-5248, 2019 WL 254691, at *5 (D.C. Cir. Jan. 18, 2019) ("[T]hose convicted of felonies are not among those entitled to possess arms."); Binderup, 836 F.3d at 349 (opinion of Ambro, J.) ("[P]ersons who have committed serious crimes forfeit the right to possess firearms much the way they 'forfeit other civil liberties, including fundamental constitutional rights.'" (quoting Barton, 633 F.3d at 175)). The government therefore does not need to justify the statute under some heightened form of means-ends scrutiny. Admittedly, some have questioned whether such a historical exception truly existed. See United States v. Chester, 628 F.3d 673, 680 (4th Cir. 2010) ("[I]t appears to us that the historical data is not conclusive on the question of whether the founding era understanding was that the Second Amendment did not apply to felons."). But we must respect the language used by the Supreme Court in Heller, as well as our own prior opinions, regardless of whether it is controlling. See United States v. Bloom, 149 F.3d 649, 653 (7th Cir. 1998) ("The Supreme Court often articulates positions through language that an unsympathetic audience might dismiss as dictum . . . and it expects these formulations to be followed.").

For these reasons, I concur that the district court's judgment should be affirmed.

_____