# United States Court of Appeals
### For the Eighth Circuit

_____

No. 25-1396

_____

United States of America

*Plaintiff - Appellee*

v.

Christopher L. Carroll, also known as Chris; Whiskey Dix Big Truck Repair, LLC

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: November 20, 2025
Filed: February 11, 2026

_____

Before COLLOTON, Chief Judge, SHEPHERD and ERICKSON, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

After a jury trial, Christopher Carroll was convicted of six fraud counts stemming from his application for and receipt of funds pursuant to the Paycheck Protection Program (PPP) during the Covid-19 pandemic. Carroll was also convicted of sixteen counts of tampering with a Clean Air Act (CAA) monitoring device, one count of conspiracy to violate the CAA, and two counts of witness tampering, while his co-defendant, Whiskey Dix Big Truck Repair, LLC, (WDBTR)

was convicted of sixteen counts of tampering with a CAA monitoring device. The district court[1] sentenced Carroll to 108 months' imprisonment and ordered him to pay over $3 million in restitution and sentenced WDBTR to 3 years' probation and ordered it to pay an assessment of $6,400. On appeal, both Carroll and WDBTR challenge the district court's denial of their motion to dismiss the indictment on the grounds that the grand jury was improperly instructed that the probable cause standard governed its charging decision. Carroll also challenges the district court's decision at trial to allow the Government to introduce evidence that Carroll was on parole for a previous criminal conviction at the time he committed the instant offenses. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In 2021, Carroll, along with a business associate, George Reed, were indicted on bank fraud and money laundering charges stemming from their scheme to receive PPP funds by making material misrepresentations that their business, Square One Group (SOG), intended to use PPP funds to cover payroll and other business expenses, when Carroll and Reed actually used the funds for personal use and to acquire assets to start WDBTR. After Reed pled guilty to one count of bank fraud, a grand jury returned a superseding indictment, which charged Carroll with three counts of bank fraud, six counts of money laundering, three counts of making false statements to a financial institution, one count of conspiracy to violate the CAA, twenty-one counts of tampering with a CAA monitoring device, and two counts of witness tampering. The financial crimes stemmed from the alleged misrepresentations regarding the PPP fraud scheme, while the CAA charges arose from Carroll's involvement in disabling the emissions controls on WDBTR trucks to enhance their performance and in concealing this tampering with the emissions

---

[1]The Honorable Sarah E. Pitlyk, United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable Stephen R. Welby, United States Magistrate Judge for the Eastern District of Missouri.

control devices. Finally, the witness tampering charges arose from Carroll's attempts to influence two individuals to provide false information or otherwise impede law enforcement in their investigation of the CAA offenses. The superseding indictment also added WDBTR as a defendant, charging it, alongside Carroll, with twenty-one counts of tampering with CAA monitoring devices.

Carroll and WDBTR then filed a motion to dismiss the indictment, asserting that the district court lacked jurisdiction because the grand jury misapplied the Fifth Amendment burden of proof applicable to indictments. Carroll and WDBTR asserted that historical evidence demonstrated that the probable cause standard was not always the accepted standard and that the Founders envisioned a standard of proof higher than probable cause. A magistrate judge issued a report and recommendation, recommending that the district court deny the motion. The magistrate judge noted that the Supreme Court has long recognized the standard for grand juries as probable cause and stated that Carroll and WDBTR "have failed to convince the undersigned that the grand jury standard, long recognized by the Supreme Court, is in conflict with the grand jury standard as they allege it existed in 1791." Over Carroll and WDBTR's objections, the district court adopted the report and recommendation. In doing so, the district court noted that "[t]he Supreme Court has acknowledged and applied the probable cause standard many times," and stated that it "decline[d] Defendants' invitation to reject a standard that the United States Supreme Court has accepted." Carroll and WDBTR immediately appealed, asserting that the district court's order was appealable under the collateral order doctrine, but this Court dismissed the appeal for lack of jurisdiction as premature.

Before trial, Carroll filed a motion in limine seeking to exclude any evidence related to his status as a parolee for a prior criminal conviction. As alleged in the superseding indictment, the PPP loan application contained the answer "no" to the question of whether any individual owning 20% or more of the company seeking a PPP loan was currently on parole, when at the time of the application, Carroll was an owner of SOG and was on parole following a term of imprisonment for a previous felony conviction. The superseding indictment alleged that this was one of the

material misrepresentations in the PPP application, and that in an effort to avoid disclosing his parole status, Carroll omitted his name entirely from the PPP application, instead submitting it in his wife's name. In his motion in limine, Carroll asserted that he did not qualify as an owner of SOG under the definition contained in the PPP application and was therefore not required to include his name on the PPP application, let alone disclose that he was currently on parole. According to Carroll, because he did not make any misrepresentation about his parole status in the PPP application, any reference to it was entirely irrelevant to the charges against him, was highly prejudicial, and should be excluded from any evidence at trial. The Government filed its own motion in limine, seeking admission of Carroll's felony conviction and parole status. The Government asserted that Carroll's parole status was integral to the scheme to defraud because the superseding indictment specifically alleged that Carroll completed the PPP application in a manner to conceal his parole status. The Government argued that, while Carroll disputed whether he qualified as an owner of SOG as defined in the PPP application, Carroll's failure to disclose his parole status was relevant to his intent to defraud, regardless of the factual accuracy of whether he was an owner of SOG.

The district court determined that evidence related to Carroll's parole status was admissible, concluding that whether Carroll intentionally left his name off the PPP application to avoid disclosing his parole status or because he did not believe, under the definition of owner in the application, that he qualified as an owner of SOG was a question for the jury to resolve. The district court explained that both parties would be permitted to introduce evidence about Carroll's intent when filling out the PPP application. Ultimately, because Carroll's intent was at issue, the district court concluded that Carroll's parole status was highly probative of why he might not have included his name on the PPP application and allowed the evidence to be introduced at trial.

After a five-day trial, the jury found Carroll guilty of three counts of bank fraud, three counts of making false statements to a financial institution, one count of conspiracy to violate the CAA, sixteen counts of tampering with a CAA monitoring

device, and two counts of witness tampering.[2]  Carroll then filed a motion for a mistrial or a new trial, again challenging the district court's decision to allow evidence of his prior conviction and parole status to be introduced at trial.  The district court denied the motion for the same reasons as in its earlier ruling.  The district court also noted that, even if it had erred in admitting the evidence of Carroll's prior conviction, a new trial was warranted only where the evidence was so prejudicial that a new trial would likely render a different result, and, given the strength of the Government's evidence, a new trial would not likely produce a different result.  The district court subsequently sentenced Carroll to 108 months' imprisonment and ordered over $3 million in restitution and sentenced WDBTR to 3 years' probation and ordered it to pay an assessment of $6,400.  This appeal follows, with Carroll and WDBTR challenging the denial of the motion to dismiss the indictment and Carroll challenging the admission of evidence of his prior conviction.

## II.

First, Carroll and WDBTR assert that the district court erred in denying their motion to dismiss the indictment because an indictment returned by the grand jury under a probable cause standard of proof is invalid.  According to Carroll and WDBTR, under a founding-era analysis of the Fifth Amendment's grand jury clause, an indictment requires a standard of proof "more stringent" than probable cause.  Further, Carroll and WDBTR assert that "no Supreme Court decision has ever actually addressed the issue and held that the standard for indictments should be 'probable cause.'"  "We review the denial of a motion to dismiss an indictment *de novo*."  United States v. Wilson, 939 F.3d 929, 931 (8th Cir. 2019).

We are unpersuaded by Carroll and WDBTR's contentions.  Under the Fifth Amendment, "[n]o person shall be held to answer for a capital, or otherwise

---

[2]Prior to trial, on motion of the Government, the district court dismissed the money laundering counts and five counts of tampering with a CAA device.

infamous crime, unless on a presentment or indictment of a grand jury." U.S. Const. amend. V. While the Constitution mandates the initiation of federal prosecution through a grand jury, it does not provide the standard under which a grand jury should return an indictment. See Albright v. Oliver, 510 U.S. 266, 282 (1994) (Kennedy, J., concurring) ("The specific provisions of the Bill of Rights [in the Fifth and Sixth Amendments] neither impose a standard for the initiation of a prosecution, nor require a pretrial hearing to weigh evidence according to a given standard."). However, for over 130 years, the Supreme Court has recognized that probable cause is the standard governing grand jury proceedings. See Ex parte Bain, 121 U.S. 1, 12 (1887) ("[T]he grand jury is as valuable as ever in securing . . . 'individual citizens from an open and public accusation of crime, and from the trouble, expense, and anxiety of a public trial before a *probable cause* is established by the presentment and indictment of such a jury; and in case of high offenses it is justly regarded as one of the securities to the innocent against hasty, malicious, and oppressive public prosecutions.'" (emphasis added) (citation omitted)), overruled on other grounds by United States v. Cotton, 535 U.S. 625 (2002); see also Beavers v. Henkel, 194 U.S. 73, 84 (1904) ("The grand jury is a body known to the common law, to which is committed the duty of inquiring whether there be probable cause to believe the defendant guilty of the offense charged."). And the Supreme Court has often reiterated this standard. See, e.g., Kaley v. United States, 571 U.S. 320, 328 (2014) ("This Court has often recognized the grand jury's singular role in finding the probable cause necessary to initiate a prosecution for a serious crime."); United States v. Calandra, 414 U.S. 338, 343 (1974) ("The grand jury's historic functions survive to this day. Its responsibilities continue to include both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions."); Branzburg v. Hayes, 408 U.S. 665, 686-87 (1972) ("[T]he ancient role of the grand jury . . . has the dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions."); Shadwick v. City of Tampa, 407 U.S. 345, 352 (1972) ("Grand juries daily determine probable cause prior to rendering indictments, and trial juries assess whether guilt is proved beyond a reasonable doubt."). This authority

convincingly demonstrates that the probable cause standard has long been accepted by the Supreme Court as the proper standard for the grand jury.

Insofar as Carroll and WDBTR assert that the Supreme Court has never addressed the question precisely as they raise it here, the claim does not change our analysis. Even if the Supreme Court has not made an express holding about the probable cause standard, "[a]ppellate courts should afford deference and respect to Supreme Court dicta, particularly where . . . it is consistent with longstanding Supreme Court precedent." In re Pre-Filled Propane Tank Antitrust Litig., 860 F.3d 1059, 1064 (8th Cir. 2017). The Supreme Court has time and again recited the probable cause standard in its decisions discussing grand jury indictments, and "we must respect the language used by the Supreme Court . . . regardless of whether it is controlling." United States v. Adams, 914 F.3d 602, 611 (8th Cir. 2019) (Kelly, J., concurring). And, indeed, following Supreme Court precedent, our Court has recited the probable cause standard. See, e.g., United States v. Harper, 466 F.3d 634, 644-45 (8th Cir. 2006) ("As a threshold matter, we note that the district court's statements regarding probable cause were correct statements of the law. The grand jury returns an indictment only upon a finding that there is probable cause to believe that a crime has been committed and criminal proceedings should be instituted against a particular defendant." (citing Calandra, 414 U.S. at 343-44)). We decline Carroll and WDBTR's invitation to reject the long-standing probable cause standard for grand jury indictments. Accordingly, the district court did not err in denying Carroll and WDBTR's motion to dismiss the indictment.

III.

Next, Carroll asserts that the district court erred when it allowed the Government to introduce evidence about Carroll's parole status. Carroll asserts that, because the PPP loan application required only owners of the company to disclose their parole status, and under the application's definition of owner he did not qualify, his parole status was not required to be disclosed, was irrelevant to the charges, and was highly prejudicial. "We review [the] district court's . . . evidentiary rulings and

-7-

denial of a motion for a new trial for abuse of discretion." United States v. Oliver, 987 F.3d 794, 799 (8th Cir. 2021) (first alteration in original) (citation omitted). However, "we will not reverse a conviction if errors were harmless," which occurs "when, after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." Id. (citation omitted).

First, Carroll appears to focus his argument largely on the question of whether he, as matter of law, qualified as an owner of SOG under the definition used in the PPP application, even suggesting that a de novo standard of review applies to this question of law. However, the issue Carroll raises is one challenging an evidentiary ruling regarding Carroll's criminal history, which is separate and apart from the question of legal ownership of SOG. Properly framed, the issue is whether the district court erred in its determination that the evidence of Carroll's parole status was relevant and that the unfair prejudice of this evidence did not outweigh its probative value.

Relevant evidence has any tendency to make a fact of consequence "more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). However, a court may exclude relevant evidence where "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. "'Unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."' Unfair prejudice does not occur, however, merely because a piece of evidence damages a defendant's case." United States v. Nadeau, 598 F.3d 966, 969 (8th Cir. 2010) (citation omitted). As the district court found, evidence of Carroll's parole status was highly relevant to the question of his intent in filling out the PPP application and thus his overall intent to defraud. And the danger of unfair prejudice did not substantially outweigh the probative value of this evidence, especially where the district court instructed the jury that, if it believed Carroll acted in good faith, he could not be guilty of the crimes of bank fraud and making false statements to a financial institution. Further, the district court limited the evidence

of Carroll's prior conviction and parole status "to just the fact that Mr. Carroll committed a felony and some of the details of his parole and no other details about that conviction in [the] case–in–chief," and allowed Carroll to present evidence to support his claim that he believed he did not qualify as an owner of SOG under the definition used in the PPP application. Given the foregoing, we find no error in the district court's balancing of the probative value of the prior conviction with the risk of unfair prejudice. Cf. United States v. Williams, 796 F.3d 951, 960 (8th Cir. 2015) ("In light of the district court's careful analysis and appropriate limiting instruction, we cannot conclude that the court abused its discretion by admitting the evidence of [defendant]'s previous . . . convictions.").

Further, even assuming the district court erred, we hold that any error would be harmless. Over the five-day trial, the jury heard testimony from 18 witnesses and viewed numerous exhibits that detailed Carroll's actions and participation in the overall scheme to defraud. This included evidence that Carroll and Reed used their wives' names in the PPP applications despite neither wife holding a management position with SOG, that Carroll used PPP funds to purchase trucks to start up WDBTR while furloughing SOG employees and cancelling their health insurance, and that Carroll deposited PPP funds directly into his own personal account. Carroll has provided nothing to suggest that the fact of his prior conviction and parole status alone was so crucial to the jury's deliberations that it had more than a slight influence on the verdict. See United States v. Red Legs, 28 F.4th 931, 936 (8th Cir. 2022) (holding that "because substantial evidence other than [the challenged] testimony supported the jury's verdict, any error in admitting [the] testimony was harmless and does not warrant reversal"). Coupled with the district court's efforts to ameliorate the risk of unfair prejudice from the introduction of Carroll's prior conviction by allowing Carroll to offer his defense and instructing the jury on good faith, we are convinced that, if any error occurred, it would have been harmless. See United States v. Hawkins, 796 F.3d 843, 865 (8th Cir. 2015) (holding that the erroneous admission of an exhibit was harmless "in light of the strength of the government's case against [defendant] and the safeguards implemented to minimize the prejudicial effect of the exhibit."). The district court thus did not abuse its discretion in denying Carroll's

motion for a new trial based upon the admission of evidence of his prior conviction and parole status.

IV.

For the foregoing reasons, we affirm the judgment of the district court.  We also deny Carroll and WDBTR's motion to supplement the record.

_____